## JACOBS *v.* SOUTHERN RAILWAY COMPANY.

ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF VIRGINIA.

No. 326.  Argued April 27, 1916.—Decided May 22, 1916.

Under § 4 of the Employers' Liability Act assumption of risk as a defense is abolished only where the negligence of the carrier is in violation of some statute enacted for the safety of employees; in other cases therefore it is retained.

An experienced employee, admittedly knowing the material conditions and presence of a pile of cinders who attempts to board a moving engine with a vessel of water in his hand, must be considered as appreciating the danger and assuming the risk although at the time he may have forgotten the existence of the cinders; and this is so even if the employer was negligent in allowing the cinders to remain. There being no violation of any safety statute, the common-law defense of assumption of risk is not eliminated in such a case by the Employers' Liability Act.

116 Virginia, 189, affirmed.

THE facts, which involve the construction and application of the contributory negligence provisions of the Employers' Liability Act, are stated in the opinion.

*Mr. Edward P. Buford* for the plaintiff in error.

*Mr. William Leigh Williams,* with whom *Mr. L. E. Jeffries* was on the brief, for the defendant in error.

MR. JUSTICE MCKENNA delivered the opinion of the court.

Action under the Federal Employers' Liability Act, as amended. April 22, 1908, c. 149, 35 Stat. 65; April 5, 1910, c. 143, 36 Stat. 291.

Plaintiff in error, who was also plaintiff in the trial court and we shall so designate him, was in the service of

the railway company, in interstate commerce, as a fireman. He received injuries while attempting to get on a moving locomotive. He charged negligence against the company and sued for the sum of $20,000 damages. The negligence charged was the causing and permitting to be within dangerous proximity to the tracks of the company a pile of loose cinders over which plaintiff stumbled and slipped and was drawn under the locomotive.

The railway company, among other defenses, pleaded the following:

"That the said plaintiff was guilty of gross contributory negligence in attempting to board the engine with a water cooler filled with water in his arms, and was also guilty of gross contributory negligence in attempting to board the engine from a pile of cinders along the track; and was also guilty of gross contributory negligence in running along the track and in attempting to board the engine without looking and seeing the pile of cinders, which could have been observed with any caution and care on his part; that the said pile of cinders had been allowed to accumulate in the same manner and in the same place as they were at the time of the accident for many years prior to the accident, and that these facts were well known to the plaintiff, and that he assumed the risk of danger from said pile of cinders, if there was any danger in allowing them to remain there."

There were two trials of the action. The first trial resulted in a verdict for plaintiff for $12,000, upon which judgment was entered. The judgment was reversed by the Supreme Court of Appeals for error in the instructions.

Upon the second trial the verdict was for defendant. The court refused to set it aside and grant a new trial, but ordered judgment in accordance therewith. The Supreme Court of Appeals refused a writ of error and supersedeas, the effect of which was to affirm the judgment of the trial court.

The facts are practically undisputed. Plaintiff was engaged with a crew in shifting cars in the railway company's yard at Lawrenceville, Virginia. He descended from the engine at the depot to get drinking water for himself and the engineer. He returned with a can of water to mount the engine and then as to what took place he testified as follows: "I came down the railroad road . . . and came across the track on the crossing. At the time the train was pulling out of the last track. So I waited until the train was pulling up there, and aimed to catch it, and when I aimed to catch it I made three or four steps to get on it, you know, and I got to the cinder pile before I knew it, and I tripped, and went under the engine. . . . The cinder pile tripped me." The train was moving "just about as fast as anybody could walk, that is pretty peart walking; not over three or four miles an hour at the most." He further testified that it had been customary ever since he had been on the road "for the trainmen to get on and off the engine when it was going that way;" had seen it done hundreds of times a day and had never seen any rule forbidding it. He was about seven feet from the cinder pile when he "aimed to" catch the engine and the cinder pile was about eighteen or twenty-four inches deep and he indicated its length to be about as long as the court room and as wide as the distance from himself to a person he indicated. Describing how the cinders caused him to fall, he said they were piled "right up against the rail" and "sloped from the rail up. As I caught the engine, I made several steps, and as I hit the cinder pile they commenced miring just like mud, and it caused me to fall, and when I fell in the cinder pile the journal box kept hitting and I couldn't get up. I tried, but I couldn't. . . . Every time I made an effort the cinder pile gave way with me. . . . I fell down behind the cinder pile. The cinder pile was sloping, and I fell down by the journal box, and the train

was passing, and I rolled down next to the rail." He further testified that if he had fallen from some other cause he could have got out of danger and that when he started to get on the engine he was not conscious of any danger from coming in contact with the pile of cinders, that it was not in his mind at all. But he testified, "I had knowledge of it, of the cinders being there, but I did not know that it was dangerous. I had forgotten them being there at the time. I was watching when I was going to step on the engine—watching my feet, where I was going to step, and was not noticing the cinder pile. . . . It was not in my mind."

It is not disputed that it was customary and had been for eleven or twelve years for the ashpans of the engine to be cleaned upon the tracks and the ashes then drawn out from the tracks and, when a lot had accumulated, taken away. The piles were of irregular height.

Plaintiff contends that upon this evidence he was entitled to recover under proper instructions and that the trial court followed the decision of the Supreme Court of Appeals in giving an instruction at the second trial which it had refused to give at the first trial. The instruction is as follows:

"The Court instructs the jury that if they believe from the evidence that the existence of the cinder pile was known to the plaintiff, or that he had been working on the Southern Railway at Lawrenceville for more than a year, and that the cinders had been piled at the same place in the way described by the witnesses for many years prior to the accident, and that the plaintiff had failed to show that he had made complaint or objection on account of the cinder pile, then he assumed the risk of danger from the cinder pile, if there was any danger in it, and the Act of Congress approved April 22, 1908, permits this defense, and the jury should find their verdict for the defendant."

This instruction, it is contended,. became "the law of the case" by the decision of the Supreme Court of Appeals and precluded the instructions which plaintiff asked and which otherwise would have been correct, it is insisted, and should have been given.

The instructions refused presented these propositions: (1) The unsafe character or condition of the railway was of itself no defense to the injury caused thereby. (2) Knowledge of it by plaintiff might constitute contributory negligence and diminish the amount of recovery. (3) If the company suffered or permitted the cinders to be placed and to accumulate alongside of its main line in dangerous proximity to the railroad track or road and plaintiff's injury resulted in whole or in part from such negligence, or if the cinders constituted a defect or insufficiency in the railroad track, the verdict should be for plaintiff. (4) Knowledge of the existence of the cinders would not bar recovery but it might be considered with other evidence in determining whether plaintiff was guilty of contributory negligence and, if guilty, recovery would not be barred but the amount of recovery would be diminished in proportion to such negligence. (5) To charge plaintiff with contributory negligence he must not only have known of the cinders but also the danger occasioned by them or that the danger was so obvious that a man of ordinary prudence would have appreciated it and not have attempted to get upon the engine at the time and under the circumstances disclosed by the evidence.

The rulings of the trial court and Supreme Court of Appeals upon the instruction given and those refused make the question here and represent the opposing contentions of the parties. The railway company contends that plaintiff's knowledge of the cinder pile and his conduct constituted assumption of risk and a complete defense to the action. The plaintiff, on the other hand, insists that such knowledge and conduct amounted, at the utmost,

to no more than contributory negligence and should not
have barred recovery, though it might have reduced the
amount of recovery. Indeed, plaintiff goes farther and
contends that, whatever might have been the evidence
respecting his knowledge or lack of knowledge of the
danger, he did not assume the risk if the company was
negligent; and, further, that employees' continuance in
service with knowledge of a dangerous condition and with-
out complaint does not bar recovery under the act of
Congress. He concedes, however, that he encounters in
opposition to his contentions the ruling in *Seaboard Air
Line* v. *Horton*, 223 U. S. 492, and therefore asks a review
of that case, asserting that "the considerations upon which
the true construction of the act depends were not suggested
to the court."

The argument to sustain the assertion and to present
what he deems to be the true construction of the act is
elaborate and involved. It would extend this opinion too
much to answer it in detail. He does not express his
contention in any pointed proposition. He makes it
through a comparison of the sections of the act and insists
that to retain the common-law doctrine of the assumption
of risk is to put the fourth section in conflict with the
other sections. The basis of the contention is that the
act was intended to be punitive of negligence and does
not cast on the employees of carriers the assumption of
risk of any condition or situation caused by such negli-
gence. This is manifest, it is insisted, from the provisions
of the third section of the act which provides that the
contributory negligence of the employee "shall not bar
a recovery," and of the fifth section which precludes the
carrier from exempting itself from liability. This purpose
is executed and can only be executed, it is urged, by
construing the words of § 4 (which we shall presently
quote) to apply to "the ordinary risks inherent in the
business—the unavoidable risks which are intrinsic not-

withstanding the performance by the carrier of its personal duties. They do not include the 'secondary and ulterior' risks arising from abnormal dangers due to the employer's negligence." And, further: "The object of this section was not to adopt by *implication* the common-law defense of assumption of risk of such abnormal dangers. Its object was in *express terms* to exclude the defense which, before the passage of the act, was available to the carrier in determining what are the 'risks of his employment' assumed by the employee."

These, then, are the considerations which plaintiff says were not submitted to the court in the *Horton Case* and which he urges to support his contention that assumption of risk has been abolished absolutely.

We are unable to concur. The contention attributes to Congress the utmost confusion of thought and language and makes it express one meaning when it intended another.

The language of § 4 demonstrates its meaning. It provides that in any action brought by an employee he "shall not be held to have assumed the risks of his employment in any case where the violation by said common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." It is clear, therefore, that the assumption of risk as a defense is abolished only where the negligence of the carrier is in violation of some statute enacted for the safety of employees. In other cases, therefore, it is retained. And such is the ruling in the *Horton Case*, made upon due consideration and analysis of the statute and those to which it referred. It was said: "It seems to us that § 4, in eliminating the defense of assumption of risk in the cases indicated, quite plainly evidences the legislative intent that in all other cases such assumption shall have its former effect as a complete bar to the action." And there was a comparison made of § 4 with the other

sections and the relation and meaning of each determined
and the preservation by the statute of the distinction
between assumption of risk and contributory negligence,
which was pronounced "simple" although "sometimes
overlooked." Cases were cited in which the distinction
was recognized and applied (p. 504).

It is, however, contended that the conditions of the
application of assumption of risk were not established
and that "to charge a servant with assumption of risk
the evidence (1) must show that he was 'chargeable with
knowledge of the material conditions which were the
immediate cause of his injury,' and (2) must establish his
'appreciation of the dangers produced by the abnormal
conditions.'" The testimony of plaintiff is adduced to
show that these conditions did not exist in his case.

He admitted a knowledge of the "material conditions,"
and it would be going very far to say that a fireman of an
engine who knew of the custom of depositing cinders
between the tracks, knew of their existence, and who
attempted to mount an engine with a vessel of water in
his hands holding "not over a gallon" could be considered
as not having appreciated the danger and assumed the
risk of the situation because he had forgotten their exist-
ence at the time and did not notice them. We think his
situation brought him within the rule of the cases. *Gila
Valley Ry.* v. *Hall*, 232 U. S. 94, 102.

It is objected, however, that instruction A, "viewed
wholly with reference to common-law principles," is
erroneous in that it omitted to state as an element the
appreciation by plaintiff of the danger of the situation
as necessary to his assumption of risk. But that objec-
tion was not made at the trial. The objection made was
general, that the instruction did "not correctly state the
common-law doctrine of assumption of risk." It was
therefore very indeterminate, and we cannot say that
the court considered that it was directed to the omission

to express or to bring into prominence the appreciation by plaintiff of the danger he incurred.

The instruction was refused by the trial court upon objection by plaintiff. It was considered by the Supreme Court of Appeals and plaintiff contended against it there only upon the ground that the assumption of risk was not available as a defense under the act of Congress. He made the contention there that he does here, and which we have already considered, that the act of Congress precludes the defense of assumption of risk of any condition or situation caused by the negligence of a carrier. And this was the full extent of plaintiff's contention. Had he made the specific one now made the Supreme Court of Appeals would have dealt with it, for the opinion of the court shows a clear recognition of the elements necessary to the doctrine of assumption of risk and the trial court as well must have understood them; and we cannot suppose that the court discerned in plaintiff's general objection the specification which he now contends was necessary and which it was error to refuse.

*Judgment affirmed.*