FT. WORTH & D. C. RY. CO. v. MILLER.
(No. 8786.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 16, 1918. Motion for Rehearing Withdrawn March 23, 1918.)

1. APPEAL AND ERROR ⟨⟩215(1)—PRESUMPTION.

Failure to object to an instruction raises the presumption that the party so failing approved it.

2. MASTER AND SERVANT ⟨⟩204(2)—FEDERAL EMPLOYERS' LIABILITY ACT — ASSUMPTION OF RISK.

Under the federal Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. 1916, §§ 8657–8665), when the negligence for which damages are sought does not amount to a violation of the terms of the federal statutes enacted for the safety of the employés, known as the Safety Appliance Acts, the defense of assumed risks at common law is left intact, so that such defense may be set up in action for injuries on railroad turntable, as against allegations that the handle was too short, there was insufficient light, the electric turner was out of order, and the current was left on therein when plaintiff was ordered to turn the table by hand.

3. MASTER AND SERVANT ⟨⟩217(1)—FEDERAL EMPLOYERS' LIABILITY ACT — ASSUMPTION OF RISK.

It is a well-settled rule of the common law that a servant assumes, not only the risks ordinarily incident to performance of duties of his employment, but also those arising from the negligence of the master, if he knows or in the proper discharge of the duties of his employment necessarily must have known of such negligence and of the dangers incident thereto in performing such service.

4. MASTER AND SERVANT ⟨⟩217(20) — FEDERAL EMPLOYERS' LIABILITY ACT — ASSUMPTION OF RISK.

A roundhouse helper who had worked for over two years about engines and a turntable, which was always lighted the same way, the lever handle of which had always been the same length, and the electrical turner had for months been in the same condition, all of which he knew, assumed the risk of injury from such conditions.

5. MASTER AND SERVANT ⟨⟩286(32)—FEDERAL EMPLOYERS' LIABILITY ACT — ASSUMPTION OF RISK.

Where injured servant's petition charged negligence in ordering him to operate turntable by hand while the electric current was turned on in the machine turner, without the servant's knowledge, there was an issue of negligence for the jury, since the servant did not assume such risk.

6. MASTER AND SERVANT ⟨⟩217(1)—FEDERAL EMPLOYERS' LIABILITY ACT — ASSUMPTION OF RISK.

To subject servant to defense of assumed risk, it is not necessary that he understand operation of a complicated machine, but only that he know the dangerous condition thereof, or

should know it, in the exercise of reasonable care.

7. TRIAL ⟨⟩253(9)—INJURIES TO SERVANT—INSTRUCTIONS.

Where injured servant's testimony disclosed that he was legally chargeable with knowledge of some of the dangerous conditions, it was error to charge that he could recover if the master was negligent.

8. TRIAL ⟨⟩252(11)—INJURIES TO SERVANT—INSTRUCTIONS—WARNING SERVANT.

Where injured servant's testimony disclosed that he was legally chargeable with knowledge of some of the dangerous conditions, requested instruction that he did not assume the risk if he acted under orders without time to appreciate the danger was improper.

Appeal from District Court, Tarrant County; R. B. Young, Judge.

Action by J. M. Miller against the Ft. Worth & Denver City Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Thompson, Barwise & Wharton and A. J. Baskin, all of Ft. Worth, for appellant. Simpson & Estes, of Ft. Worth, for appellee.

DUNKLIN, J. The Ft. Worth & Denver City Railway Company has appealed from a judgment against it in favor of J. M. Miller for damages as a result of personal injuries sustained by him while employed in the roundhouse of the railway company in the city of Ft. Worth.

Located in the roundhouse was a turntable about 70 feet in diameter, which was used to turn the engines after they had been run from a track outside to a track constructed upon the turntable. The table was equipped with an electrical appliance for the purpose of turning it by electricity. An attachment known as the "rheostat" was located on the turntable, and was a device by means of which the current of electricity necessary to turn the table was turned off or on. Attached to the table was a lever which extended several feet beyond the outer circumference of the table, which was designed and used for the purpose of turning the table whenever the electric appliance was not in working order. This lever extended 6 or 7 feet over the edge of the platform which surrounds the turntable, and inclines upward from the turntable; being a height of about 18 inches above the platform nearest to the other circumference of the table and about 3 feet above the platform at the farther end.

Plaintiff was employed by the company to perform services in and about the roundhouse, including the work of putting out and building fires in the engines, and assisting in placing engines on the turntable and turning them around. On the occasion in controversy, an engine of great weight was placed on the turntable by Mr. Kelly, the foreman, and plaintiff who was working under him. After so placing it, Mr. Finley and Mr. Johnson, two other employés, attempted

to turn the table by using the electric appliance provided for that purpose, but were unable to do so. When the foreman and plaintiff made that discovery, the foreman suggested that there was no sand in the box and that the absence of sand was the cause of the failure of the table to turn. Thereupon he directed plaintiff to get a bucket of sand and put it in the box, which plaintiff did. But as the table still failed to turn, the foreman ordered the plaintiff to assist in turning it by pushing on the lever. The foreman, Finley, Johnson, and plaintiff all took hold of the lever and began pushing it; plaintiff having hold of the lever at the point nearest to the outer circumference of the turntable. Soon after plaintiff began pushing upon the lever the table began to turn in consequence of the working of the electric appliance. At that time, plaintiff was in a stooping position with his breast against the lever and his legs so extended that his feet were within about one foot of the pilot of the engine, which extended over the platform surrounding the turntable. According to plaintiff's version, when the table thus began to turn as a result of the application of electric power, the lever upon which he was pushing suddenly pulled away from him and caused one of his feet to so slip or stumble as to be caught under and dragged by the pilot of the engine until it came in contact with one of the rails of a track leading to the turntable, and thereby his leg was bruised and crushed. Recovery for damages for that injury was the purpose of this suit.

The trial was before a jury, who returned a verdict in response to a general charge submitted to them by the court. While there were numerous issues of negligence tendered in plaintiff's petition, the following were the only ones submitted in the court's charge: First, that the place at which defendant was working at the time of his injury was insufficiently lighted; second, that the electric appliance and apparatus installed for the purpose of turning the table was not in proper working condition; third, that the electricity had been turned on at the time plaintiff undertook to assist in turning the table by means of the lever with no one in charge of the rheostat to cut it off, all without the knowledge of the plaintiff; fourth, that the lever provided by defendant by which to turn the table was too short to be used for that purpose.

Among other defenses, the railway company pleaded specially that at the time of plaintiff's injury he was engaged in the service of handling interstate commerce, and that, if he was injured through the negligence of the defendant as alleged in his petition, he assumed the risk of such injury therefrom, under and by virtue of the federal Employers' Liability Act, because, prior to and at the time he undertook to perform the services he was performing at the time of his injury, he knew of such negligence and of the risk and dangers incident to the performance of such service under the circumstances, or in the necessary and proper discharge of his duties should have acquired such knowledge, and therefore was chargeable with such knowledge. And the defense of assumed risk was specially pleaded to each of the allegations of negligence mentioned above. Defendant also pleaded in the alternative that, if plaintiff did not know of the alleged negligent conditions causing his injury, he was nevertheless guilty of negligence proximately contributing to his injury in failing to acquire such knowledge, and that such negligence on his part would diminish his recovery in any event, under the same federal act.

[1] The court instructed the jury that at the time of plaintiff's injury he and the defendant were engaged in the service of interstate commerce, and the evidence was sufficient to sustain a finding to that effect. Furthermore, plaintiff urged no objection to that instruction, and by his failure so to do he, at all events, is presumed to have approved it. G. T. & W. Ry. v. Dickey (Sup.) 187 S. W. 184.

[2] Under the federal Employers' Liability Act, when the negligence for which damages are sought does not amount to a violation of the terms of the federal statutes enacted for the safety of employés, known as the Safety Appliance Acts, the defense of assumed risks at common law is left intact; and in the present suit the alleged negligence does not involve a violation of any of those acts. S. A. L. Ry. Co. v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Jacobs v. So. Ry. Co., 241 U. S. 229, 36 Sup. Ct. 588, 60 L. Ed. 970; Freeman v. Powell, 144 S. W. 1033.

[3] It is a well-settled rule of the common law that a servant assumes, not only the risks ordinarily incident to performance of duties of his employment, but also those arising from the negligence of the master, if he knows, or in the proper discharge of the duties of his employment necessarily must have known, of such negligence and of the dangers incident thereto in performing such service. St. L. S. W. Ry. Co. v. Hynson, 101 Tex. 543, 109 S. W. 929; Quill v. H. & T. C. Ry. Co., 93 Tex. 616, 55 S. W. 1126, 57 S. W. 948; Patton v. Dallas Gas Co. (Sup.) 192 S. W. 1060.

[4] Plaintiff had been performing the same service for more than two years prior to the accident; and, without undertaking to set out the evidence, we think it sufficient to say it was conclusively shown by his own testimony that for several months prior to the accident there was the same absence of lights at the place where he was employed as existed on the night of the accident, that the length of the lever used to

turn the turntable was the same during all of that time, and that the condition of the electrical appliance during the same period of time was in the same condition as it was on the night of the accident, all of which conditions and the risks incident thereto in the performance of the duties of his employment were known to the plaintiff at the time, or necessarily must have been known to him in the proper discharge of his duties, when he undertook to assist in turning the table by pushing on the lever. Under such circumstances, he must be held to have assumed the risks of injury from those conditions, and the trial court erred in submitting any of those issues to the jury as a basis for a verdict in plaintiff's favor; and for that error the judgment must be reversed. And in this connection it may be added that there was no evidence to show that the alleged failure to have the premises properly lighted in any manner contributed to cause the injury.

[5] But plaintiff testified that he did not know that the electricity had been turned on in the appliance provided for the turning of the table at the time he undertook to assist in pushing the lever, although he admitted that he knew no one was in charge of the rheostat for the purpose of cutting off the current of electricity. The allegations of negligence in plaintiff's petition with respect to those matters were that the defendant was guilty of negligence in instructing him to assist in pushing the lever with the electric power turned on the machine without his knowledge, and was also guilty of negligence in not having some one in control of the appliance to stop the machine. In the court's charge those two issues were combined and submitted as one single issue. As he himself testified he knew no one was in charge of the machine, the risk of the injury from the negligence, if any, of the master in so failing to have some one in control of the rheostat for the purpose of cutting off the electric current was assumed. We are of the opinion, however, that the same cannot be said of the alleged negligence in directing plaintiff to push on the lever while the electricity was on, if he was ignorant of the fact that the electricity had been turned on at the time, as he testified was true. And, in view of that conclusion, we overrule appellant's contention as advanced in different assignments of error that there was no issue of negligence, which should have been submitted to the jury.

Appellee has cited such authorities as Marshall v. St. L. S. W. Ry., 107 S. W. 883, Bering Mfg. Co. v. Femelat, 35 Tex. Civ. App. 36, 79 S. W. 869, and Howard Oil Co. v. Farmer, 56 Tex. 301, which announce the general rule that, in the absence of any knowledge on the part of the servant of dan-

ger to him in the performance of a particular service, which he is directed to perform by the master, he has the right to assume that the work is not dangerous, and under such circumstances he does not assume the risk of such dangers. But those authorities have no application to any of the issues of negligence discussed above, save and except the one issue of alleged negligence in directing plaintiff to assist in turning the table by using the lever while the electricity was on.

[6] Appellee insists that, as the electric appliance consisted of complicated machinery, the mechanism of which was not understood by the plaintiff, he should not be held to an assumption of the risks of danger incident to its alleged defective condition or operation. That contention is without merit, since it was not necessary for him to understand the mechanism of the machinery in order to be subject to the defense of assumed risks, if he knew from the operation of the machine that it was in a defective and dangerous condition, or in the proper discharge of his duties must necessarily have acquired such knowledge.

[7, 8] As it was shown by plaintiff's own testimony that he was legally chargeable with knowledge of some of the alleged defective conditions and of the dangers of injury incident thereto, there was error in the instruction given in the general charge to the effect that he would be entitled to a recovery if defendant was guilty of negligence in failing to warn him of any and all dangers to which he was exposed; and also in plaintiff's requested instruction to the effect that he did not assume the risk of his injury, if on the occasion of his undertaking to assist in pushing the lever, in obedience to the order of the foreman so to do, he did not have time sufficient to enable him to appreciate the danger of injury to himself in so doing. Furthermore, plaintiff's pleadings, properly construed, did not tender the issue of negligence in failing to warn him of the danger to which he was exposed.

For the reasons indicated, the judgment is reversed, and the cause is remanded.

CONNER, C. J., not sitting.