FLORENCE RAMSEY, ADMINISTRATRIX, ETC., RESPOND-
ENT, v. ATLANTIC CITY RAILROAD COMPANY, AP-
PELLANT.

Argued November 16, 1921—Decided March 6, 1922.

1. Under the Federal Employers' Liability act of congress of April
   22d, 1908—*U. S. Comp. Stat.* 1918, *p.* 1384, ¶¶ 8657, 8659 (*Com-
   pact ed.*)—in an action by the employe against a common car-
   rier, the assumption of risk by the employe is open as a defence,
   except where the negligence of the carrier is in violation of some
   statute enacted for the safety of employes.
2. There is a distinction between contributory negligence and as-
   sumption of risk. Contributory negligence involves the notion of
   some fault or breach of duty on the part of the employe. It is
   not a bar to a recovery of damages in an action under the Federal
   Employers' Liability act of congress.

On appeal from the Supreme Court.

For the appellant, *French & Richards* and *Floyd H.
Bradley.*

For the respondent, *D. Trueman Stackhouse* and *David O.
Watkins.*

The opinion of the court was delivered by

BLACK, J.   The action in this case was instituted to re-
cover damages for the death of plaintiff's intestate, a brake-
man.   The action was brought by the plaintiff under the pro-
visions of the Federal Employers' Liability act of April 22d,
1908.   *U. S. Comp. Stat.* 1918, *p.* 1384, ¶¶ 8657, 8659 (*Com-
pact ed.*).   The fatal injuries received by the plaintiff's intes-
tate occurred October 30th, 1917, while in the employment
of the defendant company.   It is admitted the Federal Em-
ployers' Liability act governs the rights and liabilities of the
parties to the action.   The trial resulted in a judgment for
the plaintiff, based upon the verdict of a jury.   The appel-

lant alleges trial errors. The view which we take of the record requires us, however, to discuss and consider only two —first, error by the trial court in refusing to nonsuit the plaintiff; second, error in refusing to direct a verdict for the defendant.

A concise statement of the facts, as disclosed by the record, will clarify the situation and clearly indicate the legal principles which should be applied to the facts.

The plaintiff's intestate was a brakeman on one of the defendant's freight trains. He had been in the defendant's employment about eight years; six years preceding his death he worked on the same run. During the years 1914 and 1915 the train on which he worked had stopped regularly at Lawnside, the station where it is alleged he received the fatal injuries by coming in contact with the intertrack iron fence. This fence was located midway between the main north and southbound tracks. It was two and a half inches wide and four feet three inches high. The distance between the two outer rails of the tracks was seven feet and five inches.

On the night of the accident, the freight train upon which the plaintiff's intestate was employed was making its regular trip from Winslow Junction to Camden, New Jersey. The train left Winslow Junction at eight-twenty P. M., after the car journals had been regularly inspected and a report made to the conductor. The night was unusually dark and cloudy, following a day of rain. About thirty minutes after the train left Winslow Junction, the conductor and the plaintiff's intestate discovered a hot box on the left wheel of the freight car next to the caboose. After watching the hot box from the left-hand side of the back platform of the caboose, the conductor went inside. Shortly thereafter the plaintiff's intestate passed through the caboose to the front. At this time the train was passing Magnolia, a station about one mile from Lawnside. The plaintiff's intestate was not ordered by the conductor to watch the hot box from the end of the caboose. The rules of the defendant company do not require him to take such a position. No one saw the accident. No one

knows how it happened. No one knows what he was doing at the time. When the train reached Camden, the plaintiff's intestate was found lifeless on the front left-hand steps of the caboose. His feet were resting on the bottom steps; his body on the next step above; his right arm around the grab-iron with his head resting on this arm; his left arm hanging down; his head and body were in such a position that one there sitting could see the hot box; but no part of his body or head extended beyond the line of the car. The injury was to the left side of the head. The following morning blood stains were found on the southerly end of the intertrack fence at Lawnside. The fence began with an iron post of a width of two and one-half inches and a height of four feet three inches. A cap and lantern were found alongside this fence similar to the one used by the plaintiff's intestate. The intertrack fence was similar in structure to the ones erected at all the other stations of the defendant company between Camden and Winslow Junction, although some stations had no fences. The fence was constructed in 1904. It had not been changed since its erection. These intertrack fences were erected to prevent accidents to passengers getting off of trains and passing over the tracks in the path of trains coming from the opposite direction. The distance, as stated, between the two outer rails of the tracks was seven feet five inches. The plaintiff's intestate knew of the existence of the fence. No lights were placed on the fence at night. There was no evidence of a custom of the defendant company to light any of the intertrack fences on its right of way at stations.

We think it is clearly demonstrated the death of the plaintiff's intestate, as provided by the statute, did not result in whole or in part from the negligence of the defendant company, its officers, agents or employes, or by reason of any defect or insufficiency, due to its negligence in its cars, engines, appliances, machinery, tracks, roadbed, works or other equipment. The statute further provides the fact that the employe may have been guilty of contributory negligence

shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employe.

Contributory negligence involves the notion of some fault or breach of duty on the part of the employe. *Seaboard Air Line Railway Co.* v. *Horton,* 233 *U. S.* 504; *Celola* v. *Lehigh Valley Railroad Co.,* 89 *N. J. L.* 691. We fail to see wherein there is any evidence to show that the plaintiff's intestate was guilty of any fault or breach of duty—in short, guilty of contributory negligence.

The statute also provides that the employe does not assume the risk where the negligence of the common carrier is in violation of any statute enacted for the safety of employes which contributed to the injury. *Jacobs* v. *Southern Railway Co.,* 241 *U. S.* 229. Suffice it to say, that is not this case.

But in other cases the rulings of the United States Supreme Court, the ultimate authority on the construction of this statute, are uniform, to the effect that the assumption of risk by the employe is a defence open to the defendant in this class of actions brought under the federal statute. It is demonstrated to our satisfaction the plaintiff's intestate assumed the risk of the hurt or injury which caused his death. What the United States Supreme Court said, speaking through Mr. Justice Moody, in the case of *Butler* v. *Frazee,* 211 *U. S.* 467, is pertinent:

"Where the conditions are constant and of long standing, as in the case under discussion, and the danger is one that is suggested by the common knowledge which all possess, and both the conditions and the dangers are obvious to the common understanding, and the employe is of full age, intelligence and adequate experience, all these elements of the problem appearing without contradiction, from the plaintiff's own evidence, the question becomes one of law for the decision of the court. Upon such a state of the evidence, a verdict for the plaintiff cannot be sustained. It is then the duty of the judge presiding at the trial to instruct the jury accordingly."

To the same effect are *Cetola* v. *Lehigh Valley Railroad Co., supra; Seaboard Air Line Railway Co.* v. *Horton,* 233 *U. S.* 492, 504; 239 *Id.* 595.

We think the plaintiff's intestate assumed the risk of the injury. This defence was open to the defendant company. The facts were not in controversy. It was therefore error for the trial court to refuse to nonsuit the plaintiff or to direct a verdict in favor of the defendant, as there was no question of negligence to be submitted to the jury, either of the defendant or the plaintiff's intestate. The principle we have applied to the facts of this case and the conclusion reached find illustration and support in the following cases, among many others in the reports: *Raub* v. *Lehigh Valley Railroad Co.,* 87 *N. J. L.* 603; *Nagle* v. *Hines,* 95 *Id.* 240; *Chicago, &c., Railway Co.* v. *Bower,* 241 *U. S.* 475; *Southern Railway Co.* v. *Gray,* 241 *Id.* 333; *Southern Pacific Co.* v. *Berkshire,* 41 *Sup. Ct.* 162.

The judgment will be reversed and a *venire de novo* will be awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK. JJ. 16.