GULF, M. & N. R. Co. *v.* WALTERS.

(Division A. June 1, 1931.)

[134 So. 831. No. 29404.]

C. C. Smith, of Richton, **J. W. Backstrom,** of Leakesville, **W. S. Welch** and **Ellis B. Cooper,** both of Laurel, for appellant.

**J. M. Byrd,** of Leakesville, and **Currie & Currie,** of Hattiesburg, for appellee.

Cook, J., delivered the opinion of the court.

The appellee, Cora E. Walters, as administratrix of the estate of Leonard Walters, deceased, instituted this against the appellant, Gulf, Mobile & Northern Railroad Company, to recover damages for the death of the said Walters while he was serving as a brakeman on the yards of the appellant at Union, Mississippi, and, from a judgment in favor of said administratrix for two thousand five hundred dollars, the railroad company prosecuted this appeal.

The declaration was in twelve separate counts, seven of which charged, in varying language, that, at the time of his death, the deceased and the appellant were engaged in interstate commerce; that it was the duty of appellant to equip its cars with automatic couplers, and it failed to so equip its cars, so that, when the car on which the deceased was riding came into contact with a

cut of cars standing on the main line of the railroad, the coupler did not work and the cars separated, resulting in the deceased being knocked off the car and under the wheels thereof; that, while the deceased was on the top of a car, engaged in the discharge of his duties, the engineer, knowing the dangerous and perilous position of the deceased on the car, without signaling to him, suddenly and violently applied the steam to the engine attached to the car on which the deceased was working, thereby causing a violent impact with another cut of cars, so that deceased was thrown from the top of the car under the wheel thereof and killed; that the engineer negligently failed to obey the signals of the deceased to back said car slowly, and negligently backed the same at a high and reckless rate of speed, into other cars, resulting in the death of the deceased; that, at the time of the injury and death of the deceased, a flying switch was being made, and the deceased was on top of the car to control it while being moved in the process of making this flying switch; and that, as a result of the defective condition of the hand brakes on the car, the deceased could not operate the same, and consequently there was a collision with other cars which knocked the deceased off the top of the car and killed him.

At the conclusion of the evidence, the court granted peremptory instructions requested by the appellant upon all counts of the declaration except the third, eighth, and tenth. The third count charged that the appellant and the deceased were engaged in interstate commerce, while the negligence charged thereunder was the failure of the engineer to obey the signals of the deceased to back the car on which he was stationed slowly, and the high and reckless speed at which the said car was backed into other cars. The eighth count charged that the engineer applied an unreasonable, unnecessary, and dangerous quantity of steam and moved the said box car at a dangerous rate of speed, so that it collided with

other cars in a violent manner and threw the deceased off the top of the car under the wheels thereof, while the tenth count charged that the death of the deceased was the proximate result of a violation of the statute prohibiting the operation of locomotives or trains at a greater rate of speed than six miles per hour in an incorporated municipality.

The proof shows that the town of Union is a junction point on the appellant's railroad lines, with the main line running north and south through the town, and branch lines running east and west from that point. The deceased was head brakeman on a freight train operating through the town of Union, and, on the occasion of his death, the crew of this train was engaged in switching operations on the yards at Union, and were making up trains, including the train which this crew was to carry out later in the morning.

In the process of making up the train, which was to be carried out later by this crew, a cut of seven cars had been assembled on the main line track. The testimony for the appellee is to the effect that the engine was coupled to a box car, which was pulled onto the main line some distance north of this cut of cars, and that the head brakeman, the deceased, climbed on the car as it was being backed into this cut of cars, that he took a position about three feet from the south end of the car, and that for a distance of one hundred feet or more, this car, with the engine attached, was driven toward, and into, the cut of cars at a rate of speed of twelve to twenty miles an hour, and that, by the violent impact of the car on which the deceased was standing with the cut of cars, the deceased was thrown from the top of the car under wheels thereof and killed.

The testimony bearing upon the question of the nature of the deceased's employment at the time of his death, whether interstate or intrastate, is without material conflict. It shows that the appellant's main line

of railroad extends from Mobile, Alabama, to Jackson, Tennessee, and that the engine and train on which the deceased and the crew of which he was regularly a part was a local freight train; that the car on which the deceased was riding at the time of his injury, and which was being backed into the cut of cars on the main line, was loaded with intrastate shipments; that the cut of cars standing on the main line track which was assembled for the purpose of becoming a part of the train to be carried out by this engine and crew after the switching operations were finished, contained one car loaded with interstate shipments. While the testimony upon the point is to some extent confused, it appears that the only permissible conclusion therefrom is that the car on which the deceased was riding was being backed into this cut of cars for the purpose of becoming a part thereof, and that this cut of cars was being assembled in the process of making up the train operated by this crew and locomotive; and the proof is clear and positive that this entire cut of cars moved as a part of this regular train a short while after deceased was killed.

The appellant assigns as error the action of the court below in refusing an instruction requested by it to the effect that the law restricting the operation of a train to a speed of not more than six miles an hour while running within the corporate limits of a municipality, did not apply in this case, and in instructing the jury, at the instance of the appellee, that, if at the time and instant of the death of the deceased, the locomotive and car which caused his death was being operated at a greater rate of speed than six miles an hour within the corporate limits of the town of Union, such speed was unlawful, and that, if they believed from the preponderance of evidence that such speed proximately caused or contributed to the injury and death of the deceased, then the appellant was liable to the appellee for the damages sustained by her as a result of such death. In the case of

Dowell v. Railroad Company, 61 Miss. 519, it was held that this statute (section 1047, Code 1880, now section 6130, Code 1930) "does not embrace employees among those to whom a right of action is given by it. . . . Aside from authority, we consider it better policy to deny to employees a right to recover for violations of law in which they are themselves the actors. The statute forbidding a greater speed than six miles an hour in towns is more likely to be observed by employees on trains if they are required to take all risk of violating it. To permit them to violate the statute and to derive advantage from it would serve to tempt to disregard it." Since this statute does not embrace employees among those to whom a right of action is given by it, the granting of the above-mentioned instruction was prejudicial error.

The appellant next contends that the undisputed proof shows that, at the time of his injury and death, the deceased was engaged in interstate commerce, and that consequently the cause should have been submitted to the jury under the legal principles applicable under the Federal Employers' Liability Act (45 U. S. C. A., secs. 51-59), and that it was error to submit to the jury as an issue to be determined by it, the question of whether or not he was so engaged at the time of his death. In response to this assignment, the appellee contends, first, that, under the evidence, no error was committed in submitting this issue to the jury; and, second, if, as testified to by appellee's witnesses, a locomotive and car on which the deceased was riding was being backed into a cut of cars at a rate of speed that was admitted to be excessive and negligent, the appellant would be liable under either the state or federal law, and consequently that it was wholly immaterial whether the deceased was engaged in intrastate or interstate commerce at the time of his death. We cannot agree that, as applied to the facts in evidence here, the legal principles applicable are entirely

the same under the state law and federal act; consequently the question of whether or not deceased was engaged in interstate commerce is material.

As hereinbefore stated, the testimony bearing upon this question is wholly undisputed, and, from this testimony and the permissible inferences to be drawn therefrom, it is clear that the crew of which the deceased was a member was engaged in making up a train that was to depart on its regular run within a short while thereafter; that, in the process of making up this train, a cut of seven cars containing one car loaded with interstate shipments had been assembled on the main line track; that, at the time of his injury, the deceased was riding on an intrastate car that was attached to the locomotive and was being backed into this cut of cars for the purpose of becoming a part thereof and a part of the train being made up; and that this intrastate car moved out shortly thereafter as a part of this train, which also contained the interstate car. The interstate character of the train that was being made up was fixed by the fact that it contained a car loaded with interstate merchandise. Grigsby v. Southern Railway Co. (C. C. A.), 3 Fed. (2d) 988. In the case of Baltimore & Ohio Railroad Co. v. Darling (C. C. A.), 3 Fed. (2d) 987, a brakeman, when injured, was controlling the movement of a car on a yard track for the purpose of making it a part of an interstate train, soon to move on in interstate commerce, and it was held that this "work was so closely related to interstate commerce as to be practically a part of it," and that this was true, although there was a possibility of its being cut out.

In the case of Shanks v. Railroad Co., 239 U. S. 556, 36 S. Ct. 188, 189, 60 L. Ed. 436, L. R. A. 1916C, 797, the true test of employment in interstate commerce in the sense intended is stated to be, "Was the employee, at the time of the injury, engaged in interstate trans-

portation, or in work so closely related to it as to be practically a part of it?'' While in the case of the Louisville & Nashville Railroad Co. v. Parker, 242 U. S. 13, 37 S. Ct. 4, 5, 61 L. Ed. 119, it was held that, where an act done was for the purpose of furthering the movement of a car in interstate commerce, the purpose would control and the business would be interstate; the language of the court being as follows: ''The business upon which the deceased was engaged at the moment was transferring an empty car from one switch track to another. This car was not moving in interstate commerce, and that fact was treated as conclusive by the court of appeals. In this the court was in error, for if, as there was strong evidence to show, and as the court seemed to assume, this movement was simply for the purpose of reaching and moving an interstate car, the purpose would control and the business would be interstate. The difference is marked between a mere expectation that the act done would be followed by other work of a different character, as in Illinois C. R. Co. v. Behrens, 233 U. S. 473, 478, 58 L. Ed. 1051, 34 S. Ct. 646, Ann. Cas. 1914C, 163, 10 N. C. C. A. 153, and doing the act for the purpose of furthering the later work.''

In the case of Pensylvania R. Co. v. Morrison, 3 Fed. (2d) 986, the United States Circuit Court of Appeals, Sixth Circuit, had under consideration the case of a railroad employee who, when killed, was engaged in moving an intrastate car for the purpose of placing it in a train being made up and containing both intrastate and interstate cars, and it was held that the deceased was at the time of the collision engaged in work so closely related to interstate commerce as to be practically a part of it; and, in discussing the facts and reasons for the conclusion reached, the court said: ''We reach this conclusion, not because the car in question had been a part of an interstate train before it was drilled out or because it was expected, after its ultimate allocation, to be a part of a

train hauling it with interstate cars to their ultimate destination, but because at the very moment of the collision it was moving towards track No. 2 for the very purpose of forming part of a once in twenty-four hours train, to depart within a few hours, ordinarily and when it so departed in fact hauling cars some of which were in interstate transportation. For as to such cars every movement, whether a switch within one yard or between two classification yards, or a haul either from the point of origin or to the point of destination, forms a part of the entire interstate transportation. And railroad employees engaged in the act of moving an intrastate car for the very purpose of causing it to become part of such a train participate in, further, and facilitate the interstate work.''

The language of the courts in the above-mentioned cases, applying the recognized test to analogous facts, appears to be controlling here and to necessarily lead to the conclusion that, at the time he was killed, the deceased was engaged in work so closely related to interstate commerce as to constitute a part thereof.

On the theory that the deceased was engaged in interstate commerce at the time of his inquiry and death, the appellant requested instructions on the assumption of risk as applicable under the Federal Employers' Liability Act. These instructions were refused, and the refusal thereof is assigned as error. In response to this assignment, the appellee contends that the negligence of the engineer in backing the locomotive and car into other cars at an excessive and dangerous rate of speed was the proximate cause of the death of the deceased, and that no rule of assumed risk can be invoked for the relief of the appellant company.

In the case of Jacobs v. Southern Railway Co., 241 U. S. 229, 36 S. Ct. 588, 60 L. Ed. 970, it was held that the express declaration by the Federal Employers' Liability Act, that an employee shall not be held to have assumed

the risk of his employment in any case where the violation by the carrier of any statute intended for the safety of employees contributed to his injury or death, must be deemed to leave in force in all other cases the defense of the assumption of risk of the carrier's negligence. In the case of Chesapeake & O. R. Co. v. De Atley, 241 U. S. 310, 36 S. Ct. 564, 565, 60 L. Ed. 1016, a brakeman whose right and duty it was to board his train as it approached attempted to do so under circumstances where the jury was warranted in finding that he could not judge the speed of the train; and the court there said: "On the facts of the case before us, therefore, plaintiff having voluntarily entered into an employment that required him on proper occasion to board a moving train, he assumed the risk of injury normally incident to that operation, other than such as might arise from the failure of the locomotive engineer to operate the train with due care to maintain a moderate rate of speed in order to enable plaintiff to board it without undue peril to himself. But plaintiff had the right to presume that the engineer would exercise reasonable care for his safety, and cannot be held to have assumed the risk attributable to the operation of the train at an unusually high and dangerous rate of speed, until made aware of the danger, unless the speed and the consequent danger were so obvious that an ordinarily careful person in his situation would have observed the one and appreciated the other."

In further discussion of the question, the court there held that the jury was warranted in finding that the plaintiff had no notice nor any opportunity to determine with reasonable certainty what the speed of the train was, or that it was too great for his safety until the engine had practically reached him, and said: "Whether the risk was an extraordinary risk depended upon whether the speed of the train was greater than plaintiff reasonably might have anticipated; and this rested upon the

same considerations that were determinative of the question of the engineer's negligence. If the jury should find, as in fact they did find, that the speed of the train was unduly great, so that the risk of boarding the engine was an extraordinary risk, the question whether plaintiff assumed it then depended upon whether he was aware that the speed was excessive, and appreciated the extraordinary danger; or, if not, then upon whether the undue speed and the consequent danger to him were so obvious that an ordinarily prudent person in his situation would have realized and appreciated them.''

The proof in the case at bar shows that the deceased was an experienced brakeman, having been engaged in that capacity for about eleven years, and that at the time of his injury and death he was head brakeman on the train, the crew of which was engaged in general switching operation in the yard, and particularly in making up the train which was to be carried out shortly thereafter by the crew; and it was his duty to couple the intrastate car to the engine, to board it, and to control the movements thereof by signals to the engineer. The testimony offered by the appellee was to the effect that the car was backed into the cut of cars at a speed of from twelve to twenty miles an hour, and the one eyewitness to the occurrence who was in position to clearly observe the entire movement of the locomotive and car, and the position of deceased at that time, testified that, when he first observed the engine and car moving down the main line track, they were about one hundred feet from the cut of cars and were then running at a speed of from eighteen to twenty miles an hour; that, without slackening this speed any whatever, the car was driven into the cut of cars with great force; that, when he first observed the car, the deceased was standing about three feet from the end thereof farthest from the engine; that as the locomotive and car moved toward the cut of cars at this excessive and dangerous speed, the deceased waved his

arm toward the witness, a movement which he said might have been a signal to the engineer, but which he interpreted as a wave of recognition and greeting to him, as he was well acquainted with the deceased. The witness observed no other signal or other movement of the deceased that might have been interpreted as a signal to the engineer to slow down, and he testified to no fact that indicated that the deceased made any effort to protect himself from the force of the impact of the cars.

Applying the language of the Supreme Court of the United States in the De Atley case, supra, to the facts stated above, the deceased had the right to presume that the engineer would exercise reasonable care for his safety, and "cannot be held to have assumed the risk attributable to the operation of the train at an unusually high and dangerous rate of speed, until made aware of the danger, unless the speed and the consequent danger were so obvious that an ordinarily careful person in his situation would have observed the one and appreciated the other." Numerous witnesses, both for the appellee and the appellant, testified that it was highly dangerous to run an engine with car attached into a cut of cars standing still at a speed of from twelve to twenty miles an hour, and that the probable result of so doing would be to injure any one riding on the moving car and to seriously damage the cars so colliding—a conclusion so evident, it would seem, as not to require proof. The proof offered by the appellee was that the deceased stood on this car while it traveled at this highly dangerous speed for a distance of more than one hundred feet, with every opportunity to observe the speed; and certain it is that from the evidence in this record the jury would have been warranted in finding that the deceased, an experienced brakeman, necessarily observed the unusually high and dangerous rate of speed and appreciated the consequent danger to him, as he stood erect only three feet from the end of the car which was about to collide with the cut of the cars which it was approaching.

There is evidence to the effect that the deceased had the right, and it was his duty as head brakeman, to communicate signals to the engineer for the purpose of controlling the movement of the car; that he was standing within three feet of the end of the car, and the brake stand which extended about three feet above the top of the car; and from all the evidence in the record the jury might have found that the engine and car were being operated at a speed of from twelve to twenty, or, as testified by one witness, eighteen to twenty, miles an hour; that this speed, under the circumstances, was highly dangerous and excessive; and that the speed and consequent danger were so obvious that the deceased, who was a brakeman of long experience in the operation or movement of cars and trains, must have been aware of the excessive speed and must have appreciated the danger thereof, and, if so, then he must be held to have assumed the risk, unless the jury should further find that he was confronted with a sudden and unexpected danger from which he did not have the time, opportunity, and means of extricating himself.

The cause should have been submitted to the jury under instructions embodying the above-stated principles, and the court below committed error in instructing the jury peremptorily that the deceased did not assume the risk, and in refusing an instruction requested by the appellant embodying the above-stated principles. There was no evidence that would warrant a finding by the jury that the couplers on the cars in question were defective, and therefore the court below correctly excluded the evidence and directed a verdict for the appellant on the second, fourth, seventh, and ninth counts of declaration, which charged that the appellant negligently failed to equip its said cars with reasonably safe and proper automatic couplers; but error was committed in granting to the appellee an instruction on the law of assumption of risk applicable where the couplers in the car were

defective, and not in compliance with the Federal Safety Appliance Act (45 U. S. C. A., sec. 1 et seq.).

For the errors indicated herein, the judgment of the court below will be reversed, and the cause remanded.

Reversed and remanded.