# Grigsby v. Louisville & N. R. Co.

(Decided Jan. 25, 1938.)

C. A. NOBLE and J. MOTT McDANIEL for appellant.

CRAFT & STANFILL, C. S. LANDRUM, J. MILLER WHITE and ASHBY M. WARREN for appellee.

OPINION OF THE COURT BY JUDGE BAIRD—Affirming.

Parley Grigsby appeals from a judgment in favor of the Louisville & Nashville Railroad Company rendered against him in the Perry circuit court. His complaint is that the court erred at the conclusion of his testimony in directing the jury to find for the railroad company. The plea is made in his petition that on January 9, 1932, appellee was engaged in interstate commerce, and that he assisted it in that work as a brake-

man on its freight train. He makes the following allegations in his petition as a basis for his cause of action:

"That he was expected and directed to work and go to his work in such a dangerous, negligent and careless way, and in such place and places that were not reasonably safe and in a manner which was not reasonably safe, and the defendant, its agents and servants wilfully failed to furnish him a reasonably safe way, means and manner in which to work and to go to work, and as a result thereof, while doing the work expected of him and required of him, and in going to said work in the manner expected and required of him, that he was compelled to, ordered and directed and did attempt to go through an unreasonably small opening, and while so doing and exercising ordinary care for his own safety, that his eye struck against a part of said opening through which he was required and directed to go, and as a result thereof he has wholly lost the sight of one eye."

Appellee traversed the affirmative allegations and in two paragraphs pleaded assumed risk and contributory negligence. The affirmative allegations in the answer were denied by appellant, completing the issue.

The question arises in the outset, applying the affirmative plea of assumed risk, to the facts developed by appellant, has he, under those facts, any standing in court?

It must be conceded that appellant cannot recover in the absence of proven negligence on the part of appellee. Appellant assumed the ordinary risks of the business he was engaged in, and also assumed the risks of his employment when the dangerous or unsafe condition of the place to work is fully known and appreciated by him, as well as extraordinary risks, known to and appreciated by him, and those due to negligence of his employer and fellow employees. Seaboard Air Line Railway v. Horton, 233 U. S. 492, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Boldt v. Pennsylvania Railroad Company, 245 U. S. 441, 38 S. Ct. 139, 62 L. Ed. 385; Chesapeake & O. Railway Company v. Nixon, 271 U. S. 218, 46 S. Ct. 495, 70 L. Ed. 914.

If appellant knew, or by the exercise of his eyes

could have known, the danger obvious and apparent to him to go through a window as small as the evidence indicated, he necessarily assumed the risk of his undertaking.

The facts are very short and simple. On the 9th day of January, 1932, appellant reported for work on a freight train, engaged in interstate commerce, as a brakeman. A part of his duty was to go into the caboose of the train. When the caboose was not in use it was kept locked, and when locked the key was left in the office of the yardmaster. On reaching where the train was located he first sought the key, but it could not be found. He was told by G. T. Alexander, yardmaster, after he was informed that the key was missing, to enter the caboose through the window, "even if he had to break in." Upon reaching the caboose, he found a small window in the cupola of the caboose open, which window was very small, only 14x16½ inches in size. The cupola is a hood that sets up on the top of the caboose. It had four windows in it, one in each end and one on each side. The side windows were smaller than the end windows. He attempted to pass through the small side window. To accomplish that undertaking he had to climb upon the caboose and go into the window feet first on his back with his face up, and when enough of his body passed through the window, sufficient to balance with that part of his body that was on the outside, he let loose the grabirons that he had hold of, "then turned over on his belly," and attempted to get down on the cushion seat on the inside. In making the turn he struck the side of his face on the edge of the weather shield, that was over the window. This shield struck him across the nose. He then fell inside, and, as he said, "went crazy" two or three days. From this contact with the weather shield he obtained the injury complained of, which was the loss of an eye. He had gone through this window before. In going through at this time, he claimed to exercise due care. There is no evidence that this window was furnished by appellee as a place to work. In fact, there was no evidence that the place where appellant received his injury was ever intended as a place to work by appellee. Its only purpose was that the light of day might enter the caboose from the outside. It was made solely for the benefit of those servants or employees that might be inside of the ca-

boose. It was not intended as a place for appellant or anyone else working for the railroad company to pass through to enter the caboose. The danger in undertaking to pass through a window of that size and place, where situated, was obvious. The weather shield, which was also placed over the window to protect those that might be inside of the caboose from the heat and light of the sun, and for no other purpose, was in plain view. Its condition was obvious and apparent to appellant or anyone should he use his eyes. While it is the duty of the master to provide his servant with a reasonably safe place to work, he does not insure the safety of the servant, and is not liable in damages for injuries sustained by him, if such danger is so obvious and is before the servant's eyes, to such extent that he must know, by the use of ordinary intelligence, the danger that confronts him.

In the instant case, the window was barely large enough for the body of a man to pass through. The weather shield was on the outside and over the window. The method used by appellant in passing through the window was with his feet first and on his back, with his face up and his eyes turned toward the weather shield. There was no way in which he could fail to see the weather shield, unless he closed his eyes. Such an undertaking was necessarily an assumed risk on the part of appellant. In fact, the injury complained of was the result of the direct negligence of appellant in attempting to pass through the window in the way and manner he did.

In the case of Louisville & N. R. R. Company v. Stewart's Adm'r, 207 Ky. 516, 269 S. W. 555, 556, the question under consideration was fully and completely decided against the contention of appellant. The facts in this case are much stronger in support of the conclusion that we reached in that case, that appellant assumed the risk in attempting to enter the caboose through this small window. The facts in the Stewart Case, supra, were, in substance, as follows: Stewart was engaged at the time in painting the inside of the elevator shaft through which two buckets operated in conveying coal from the bottom of the shaft by hoisting it to a chute where it was unloaded. In the operation a loaded bucket would go up and an unloaded one would come down. Stewart, while painting the shaft, was

struck by a descending bucket, and injured to the extent that he died. In that action, as in this one, it was alleged that both Stewart and the railroad company were engaged in interstate commerce, and the defense was that Stewart assumed the risk in working at this dangerous place. Among other things in that case, we said:

"Correctly stated, the rule is that the servant never assumes risks growing out of the master's negligence unless he knows of the want of care and consequent danger, or the want of care and danger therefrom are so obvious that an ordinarily prudent person in his situation would observe the one and appreciate the other. Hines v. Cox, 192 Ky. 94, 232 S. W. 373; Gila Valley, G. & N. R. Company v. Hall, 232 U. S. 94, 101, 34 S. Ct. 229, 58 L. Ed. 521, 524; Jacobs v. Southern R. Company, 241 U. S. 229, 235, 36 S. Ct. 588, 60 L. Ed. 970, 976; Chesapeake & O. Railway Company v. DeAtley, 241 U. S. 310, 36 S. Ct. 564, 60 L. Ed. 1016; Erie R. Company v. Purucker, 244 U. S. 320, 324, 37 S. Ct. 629, 61 L. Ed. 1166, 1167; Boldt v. Pennsyivania Railroad Company, 245 U. S. 441, 442, 38 S. Ct. 139, 62 L. Ed. 385. Even if it be conceded that in the exercise of ordinary care the company should have stopped the operation of the buckets while the painters were engaged in painting the inside of the shaft, Stewart went to work under the conditions as they were, and had been employed on the particular job for three or four days. At the time of the injury he was standing on the outside of the shaft. The buckets were constantly ascending and descending. They were right before his eyes, and he could not help seeing them. The danger of being injured, if he continued to work with any portion of his body inside the shaft while one of the buckets was passing, was perfectly obvious to a person of even slight understanding. In view of these conditions there is no escape from the conclusion that the risk, whether ordinary or extraordinary, was assumed by Stewart."

In the light of these cases, we cannot escape the conclusion that appellant assumed the risk that brought on the injury complained of, and is therefore precluded, from the facts presented, from a recovery.

Wherefore, the judgment is affirmed.