SOUTHERN RY. CO. v. ROGERS.

(Circuit Court of Appeals, Sixth Circuit. May 7, 1912.)

No. 2,202.

1. MASTER AND SERVANT (§§ 286, 288, 289*)—ACTION FOR INJURY TO SERVANT —QUESTION FOR JURY—NEGLIGENCE AND CONTRIBUTORY NEGLIGENCE.

Plaintiff was a switchman employed in the yards of defendant railroad company in which there were two parallel tracks with a distance of eight feet between the rails. One was a lead track, with a number of switch tracks connected which were operated from switch stands between the two tracks. Plaintiff was operating one of such switches when he was struck, and injured by a train on the other track. It appeared that such switch stand, unlike the others was not in the center between the tracks, but was a foot nearer the one from which plaintiff was struck. Held, that the questions of defendant's negligence in failing to furnish a reasonably safe place to work, and of plaintiff's negligence and assumption of risk, were all questions for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015. 1017–1033, 1036–1042, 1044, 1046–1050, 1055, 1068–1088, 1089, 1090, 1092–1132; Dec. Dig. §§ 286, 288, 289.*]

2. MASTER AND SERVANT (§§ 101, 102*)—INJURY TO SERVANT—MEASURE OF CARE.

In such case the same standard of care cannot be applied to plaintiff and defendant, but defendant, having exact knowledge through its engineers and employés who constructed it of the distance between the switch stand and the tracks, was negligent if it so placed the stand as to make it unnecessarily dangerous to employés, while in respect to plaintiff the question was whether a switchman of his experience should have observed that the stand was not in the center, and have appreciated the danger therefrom.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178–184, 192; Dec. Dig. §§ 101, 102.*]

3. MASTER AND SERVANT (§ 236*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE—RAILROAD SWITCHMAN.

The rules of care required of persons on or near railroad tracks, with the duty to look and listen, cannot be applied to switchmen employed in a yard where there are many tracks with the same strictness as to pedestrians at a crossing.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 681, 723–742; Dec. Dig. § 236.*]

4. MASTER AND SERVANT (§ 291*)—ACTION FOR INJURY TO SERVANT—INSTRUCTIONS.

Instructions considered and approved in an action by a switchman against the railroad company to recover for a personal injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1133, 1134, 1136–1146; Dec. Dig. § 291.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. APPEAL AND ERROR (§ 206*)—SCOPE OF REVIEW—MATTERS NOT PRESENTED TO TRIAL COURT.

The admission of evidence which proved irrelevant to the issues finally submitted, and may have been prejudicial to the adverse party, is not ordinarily ground for reversal of a judgment, unless the attention of the court was called to it, and some action asked for to correct its effect.

[Ed. Note.— For other cases, see Appeal and Error, Cent. Dig. §§ 1273, 1283–1289; Dec. Dig. § 206.*]

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

Action at law by I. C. Rogers against the Southern Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

In October, 1908, Rogers, who, at that time, was 19 years old and was employed as a switchman in the Chattanooga yards of the Railway Company, was struck by a passing train, and he brought this action for damages from the resulting injury. The issues were submitted to a jury which rendered a verdict for him, and the Railway Company brings this writ of error to review the judgment entered on the verdict. It complains because its motion for a directed verdict was not granted, and because of errors during the trial, and in the charge.

In the yards were two parallel tracks which were about 13 feet apart, from center to center, and which would thus, as counsel agree, furnish a clear space of about 6 feet between the sides of freight cars passing at the same time upon the two tracks. One of these was called the pocket track, and was used to transfer trains from one main line to another. The other was a lead track, and from it, at regular intervals, successive switch tracks, 1, 2, 3, 4, etc., led in a direction away from the pocket track. The switches connecting the lead track and these switch tracks were thrown by levers carried on switch stands and located between the lead and pocket tracks. These stands were of the low type, so that it was necessary to stoop over to work the lever. Rogers' testimony tended to show that the stand for No. 3 switch was not located centrally between the tracks, but was nearer to the pocket track and was about three feet from its rail; that the switch lever was about two feet long, and, when extended horizontally at right angles, would practically reach the line of the side of the cars on the pocket track; that while he was quite thoroughly familiar with the location, having worked in these yards for a year or more, he had never noticed the unusual proximity of this switch stand to the pocket track, nor had he ever been warned or instructed regarding any peculiar danger at this point; that always, until he made measurements after the accident, he had supposed this stand to be midway between the tracks, as the other switch stands were; that his train was to enter switch No. 3, and he came hurriedly along between the two tracks, with the lead track on his left, setting some of the switches as he passed, and hearing his train, as he supposed, coming just behind him on the lead track; that he then threw switch No. 3 to open its switch track, and as he was in the act of stooping over, operating the switch in the usual way, he was struck by the first car of a freight train which was being pushed backward along the pocket track, this being the train he had mistakenly supposed was upon the lead track; and that his injuries were received in this manner. The only negligence charged against the company and submitted to the jury was that it did not provide Rogers with a safe place to work, in that this switch stand was placed dangerously close to the pocket track.

T. H. Cooke (Cooke, Swaney & Hope, on the brief), for plaintiff in error.

J. J. Lynch (Cameron & Tatum and Spears, Lynch, Spears & Phillips, on the brief), for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). [1] 1. The motion for directed verdict was rested upon the absence of negligence by defendant, and the presence of contributory negligence and assumption of the risk by plaintiff. These subjects, while distinct, yet in this case so far involve the same circumstances and the proper conclusions from those circumstances that they can properly be considered collectively. It is urged that a switchyard is necessarily a place of danger; that switches cannot be so located as to make their operation by switchmen always safe; that there is nothing to show more danger in this situation than always must exist where a switch stand is between two tracks which are separated by the distance standard in switchyards; that whatever danger there was resulting from the location of this stand was obvious to any one familiar with the yard as Rogers was, so that he assumed the risk; and that his failure to look over his shoulder back along one of the two tracks was negligence, and contributed to the result.

It is self-evident that a switchyard is a place of danger, and that where there is a switch stand between tracks eight feet apart, rail to rail, and the switch, perhaps, must be worked while a train is passing on the adjacent track, the switchman is exposed to some peril. It is also obvious that this situation makes it imperative for the company to minimize, as far as reasonably possible, this necessary danger. (We speak of this as necessary danger, because it is not charged by the pleadings or the testimony that the two tracks were unnecessarily near together, and on this record it must be assumed that the space of eight feet, rail to rail, is a proper and sufficient space.) It is equally clear that, while Rogers assumed the risk of that danger which was obvious, he did not assume those risks which a reasonably prudent man in his situation would not have observed or foreseen; and that, while he was bound to watch out for his own safety, yet he was not bound to watch against a peril which he did not anticipate, and was not required to anticipate. It is for these reasons we have said that the three questions are governed by a common consideration—viz., the character of the danger—and, in the end, reduce themselves to the one double question whether this switch stand was located in a place of unnecessary and obvious danger; for, unless the danger was unnecessarily created by defendant, and was not obvious to plaintiff, there could be no recovery.

The case was presented to this court by the company upon the theory that there was space enough for Rogers to have operated the lever safely, but that he unnecessarily so placed himself that, by the act of stooping to the lever, he threw part of his body back into the danger zone, and so caused himself to be struck. More specifically, it is urged that he stood between the pocket track and the end of the lever, extended horizontally at right angles to the tracks, so that, when he stooped down, his body extended back two or three feet beyond the end of the lever, and it is said that in any possible way in which a switch stand can be placed between two tracks eight feet apart the operator may thus throw his body out over, or dangerously near, the other track; thus leading to the conclusion of no fault by the company or of an affirmative fault by the switchman, and to the conclu-

sion that this case would be ruled by Randall v. B. & O. R. Co., 109 U. S. 478, 3 Sup. Ct. 322, 27 L. Ed. 1003.

We do not find it necessary to adopt this specific theory of fact in connection with the motion to instruct a verdict, because it is not the only one which plaintiff's testimony will support. His testimony is at least as consistent with the theory that he operated this lever in the safest possible manner, viz., by standing, not beyond the end of the lever, but at its side, and so not placing his body in dangerous proximity to the other track any more than was necessary in reasonably safe and careful operation. The proof that plaintiff was standing beyond the end of the extended lever, and that only his stooping exposed him to danger, comes from defendant's witnesses. It follows that the trial judge in passing upon the motion was obliged to assume that plaintiff was working the switch as carefully as a prudent switchman would do, having in mind the closeness of the other track; and upon this theory it is evident that danger or safety was a matter of a few inches, and that if the stand had been midway between the two tracks, or three feet away instead of two feet away from the edge of the cars on the pocket track, Rogers would not, or might not, have been injured.

[2] In passing upon defendant's negligence or plaintiff's assumption of risk, the same standard of care cannot be applied to each. As to the defendant the question is whether, with its knowledge and the knowledge of its skilled superintendents and engineers, it exercised due care in placing this stand one foot nearer the pocket track than was apparently necessary. As to plaintiff, the question is whether a switchman of his experience should have observed that this switch stand was one foot out of its apparently normal position, and should have appreciated the danger that resulted. In such a case as this we cannot say a jury is not supported by the evidence, if it infers that the working of the switch while a train was passing on the other track might be necessary and so was within defendant's contemplation when it installed the apparatus; that a switch could be so located between the tracks as not to expose the switchman to danger from the passing train if he was careful in the operation of the switch; that defendant was bound to give the stand this safe location, but placed it one foot too near the pocket track, and thereby created an otherwise nonexistent danger; that, as placed, it could not be operated, even prudently, without bringing the operator's body within striking distance of the other train; that plaintiff had a right to suppose the stand was in its safe, rather than its dangerous, position, and so had a right to suppose that he could safely operate it while a train was passing, if he did so carefully; and that the difference in location, between safety and danger, being only one foot, though necessarily known to the constructor, was not great enough to be obvious to plaintiff and absolutely to charge him with knowledge of the danger. Under such circumstances, there is ample room for the jury, under proper instructions, to conclude that the company did not furnish a reasonably safe place to work, and that the plaintiff did not assume the risk, and was not bound to take special precautions against the danger. The case where

the man is chargeable with certain knowledge that the switch is so located that he must get into the danger zone if he operates the switch at all, no matter how carefully, is not before us.

The trial judge relied upon Choctaw, etc., Co. v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96, Tex. & Pac. Ry. Co. v. Swearingen, 196 U. S. 51, 25 Sup. Ct. 164, 49 L. Ed. 382, and similar cases to establish the right to go to the jury. Defendant urges that these cases are inappropriate, because they pertain to structures close to the track, like elevator spouts, scale frames, etc., which caused danger to a man on the side or step of a passing car, and because a man so situated cannot foresee the danger, or escape after he does see it, as can the man standing upon the ground at the similar structure where he can correctly judge the distance between the object and the side of the train, and where he can step aside if necessary. It may be conceded that these cited cases are in this respect distinguishable in their facts from the present case, but much of the reasoning of Mr. Justice Day in the former and of the present Chief Justice in the latter is quite applicable to the present facts; and the same principles which are discussed in those opinions and control those cases control this one as well. If a more exactly parallel case is desired as a precedent, it will be found in the decision of the Circuit Court of Appeals for the Seventh Circuit in C., M. & St. P. Ry. v. Riley, 145 Fed. 137, 76 C. C. A. 107, 7 Ann. Cas. 327, and in the thorough and careful consideration which that court there gave to previous decisions and to the underlying rules. This court also dealt with a partially analogous situation in Rochford v. Penn. Co., 174 Fed. 81, 98 C. C. A. 105. On the other hand, we think the theory above recited as that upon which plaintiff was entitled to go to the jury is sharply distinguishable from Randall v. B. & O. R. R., supra, by the fact that the switch there involved could have been safely worked, if Randall had taken the safe position, and by the further fact that the switch was not in an unnecessarily and unnoticeably dangerous place. Judge Cochran, speaking for this court, in Kenney v. Meddaugh, 118 Fed. 209, 55 C. C. A. 115, reviewed the cases and brought out the clear distinction that the risk of working in a particular place is assumed by the servant only when the master has made the place reasonably safe, or as reasonably safe as the servant has a right to suppose and does suppose it has been made; and Judge (now Mr. Justice) Lurton, also speaking for this court, in Nat. Steel Co. v. Hore, 155 Fed. 62, 83 C. C. A. 578, develops and states the rule that the court may not say the risk has been assumed if more than one inference may be drawn as to whether plaintiff did know, or should have known, both the fact which caused danger and the fact that danger did result.

We are cited to several decisions of the Supreme Court of Tennessee said to support defendant's position. While these questions, in the absence of statute, are of general and not of local law (B. & O. R. R. v. Baugh, 149 U. S. 368, 374, 13 Sup. Ct. 914, 37 L. Ed. 772), we have examined these cited Tennessee decisions, and find nothing inconsistent with the result we have reached, when their language is applied to our particular facts.

[3] The subject of contributory negligence requires little separate consideration. It was not necessarily negligence for plaintiff not to look back of him down the pocket track. True, he heard a train approaching, and if he had looked back down this track, or, for that matter, down either track, he would have seen that this was not the train on his track and for which he was throwing the switch, but was a train upon the other track and was almost upon him, and he would then have stepped aside and would not have been hit; but the rules of care and prudence cannot be applied to switchmen in a yard and in a maze of tracks, with the same strictness as to pedestrians at a crossing. If his own train was approaching as he supposed, he must hurry, and he must fix his attention upon switch No. 3 in order to get it thrown in time, and he was not bound to keep watch backward along the pocket track, unless he knew or should have known that in operating the switch in a prudent and careful manner, and with due reference to the proximity of the pocket track, he was exposing himself to the danger of being struck by a train on that track. As we have said, we do not think that he was imperatively bound to know of the existence of that danger, and it follows that it was not ipso facto negligent not to take a precaution against that danger, just as it follows that he was not ipso facto assuming the unknown risk.

We are satisfied that the plaintiff was entitled to go to the jury upon each one of these three controlling issues.

[4] 2. The general charge of the court fairly, and, as we think, clearly, left to the jury these three questions for its consideration. Defendant assigns error upon the court's refusal to give three specific requests.

The first was to the effect that the plaintiff could not recover, unless, in the operation of this switch, it was necessary for him to get within striking distance of the approaching cars. The defect in this request lies in the controlling effect of the word "necessary." If, in the ordinarily reasonable and prudent operation of the switch, and with due regard to the presence of the other track, the switchman might, though unnecessarily, get within striking distance, that is, as to this point, sufficient.

The second request was to the effect that the plaintiff was bound to know that standing between the switch stand and the pocket track, and, bending down as he did, his body would come within striking distance of the other track, and that, for this reason, he could not recover. This request assumes that he must have appreciated the danger because mathematics demonstrate its existence—an incorrect assumption. Further, the point suggested is fairly covered by the charge given.

The third request placed upon the plaintiff the imperative duty to look and listen for cars approaching upon the pocket track, and we have already indicated the reasons why we think this rule and this request were not applicable to this case.

[5] 3. During the trial a question was asked by plaintiff's counsel which implied and which necessarily brought before the jury the fact that the foreman in charge of the freight which struck Rogers was a negro. His color was mentioned apparently incidentally, and in con-

nection with the subject of his competency. Defendant now says that this was done for the purpose of prejudicing the jury against the defendant, and insists that the question could have no other purpose, and, in view of the well-understood local conditions, was sure to accomplish that result. We are bound to say that we do not see what other object there was in mentioning the color of the foreman, and it may be that the object was accomplished; but we cannot reverse the judgment on this ground. The declaration charged that the freight train on the pocket track was not competently handled, though this charge was finally not submitted to the jury. When the question was asked whether this man was a negro, objection was made that there was no allegation or proof charging any dereliction of duty on the part of this foreman which would make the subject competent. Plaintiff's attorney stated his purpose was to show that the man was a negro, recently put there as foreman of the yard, and that he was incompetent. The court ruled that the plaintiff might go ahead, and the defendant excepted. The witness then answered that this foreman had been in the employ of the company for 20 years, and was thoroughly competent. The subject of his color is not again mentioned in the record, nor was the question now urged brought in any further way to the attention of the judge at the trial. We cannot assume that the misconduct and the prejudice in this particular were so great that they could not have been corrected by anything which the trial judge might have done, and it follows that, the defendant not having brought to the attention of the trial judge the specific point of which it now complains, its present complaint cannot be entertained.

The judgment should be affirmed, with costs.