NEW YORK, C. & ST. L. R. CO. v. Mc-DOUGALL.

(Circuit Court of Appeals, Sixth Circuit. November 6, 1926.)

No. 4628.

1. **Master and servant** ⬅═210(4).

Brakeman may have assumed risk of overhead bridge without, or in addition to, any contributory negligence when struck thereby.

2. **Master and servant** ⬅═204(1).

If established, assumption of risk of overhead street bridge, by which brakeman standing on moving car was struck, bars recovery under Employers' Liability Act (Comp. St. §§ 8657–8665).

3. **Master and servant** ⬅═217(1).

For defense of assumption of risk, it is necessary for employee to know and appreciate the danger, or be bound to do so.

4. **Master and servant** ⬅═217(22)—Trainmen's information of overhead obstructions of less than 21 feet clearance held warning of one of only 18 feet clearance, relative to assumption of risk.

Relative to assumption of risk, time-table given trainmen, stating that there are less than 21 feet from top of rail to bottom of overhead obstruction in some places, and calling for special care in cases of scanty clearance, *held* warning of overhead obstructions of only 18 feet clearance; its purport being that a clearance of less than 21 feet may sometimes be dangerous, and hence that caution must always be used.

5. **Master and servant** ⬅═217(5)—Brakeman, struck while standing on box car by overhead street bridge, where they were numerous, held bound to know of danger from each.

Brakeman, struck while standing on box car by overhead street bridge shortly after he had sat down to avoid another, in locality where they were numerous and where he had traveled to some extent, *held* bound to know of the constantly recurring danger from some one of the bridges, and hence of the' danger from each.

6. **Master and servant** ⬅═217(1).

Where risk was or must have been known by injured employee, it is immaterial that it had been forgotten at critical moment.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; Paul Jones, Judge.

Action by John McDougall against the New York, Chicago & St. Louis Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded for new trial.

J. P. Wood and W. T. Kinder, both of Cleveland, Ohio (Tolles, Hogsett, Ginn & Morley, of Cleveland, Ohio, on the brief), for plaintiff in error.

Edward Davidson, of Cleveland, Ohio, for defendant in error.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

DENISON, Circuit Judge. Action under Employers' Liability Act (Comp. St. §§ 8657–8665). In June, 1925, McDougall, who had been a railroad brakeman for 14 consecutive years, had been so employed by the defendant for 15 months. This service had been on and about its various tracks and yards in the city of Cleveland. On the afternoon of that day he was head brakeman on a train going out to a west side yard. Sitting on the rear end of a box car top, he was looking back, watching for a signal from the conductor. Receiving it, he stood up to transmit it to the engineer. Just as he rose to full height and turned around, his head was struck by the West Thirty-Eighth street overhead footbridge. For the resulting injury he brought this action and recovered.

The bridge, though built by the railroad, had been erected pursuant to grade separation laws and city ordinances, and was maintained by the city as part of its highway system. Its mere existence, with its 18-foot clearance, did not constitute negligence; a failure to warn him is the only material negligence charged.

[1-3] It is not now important that McDougall may have been guilty of contributory negligence, operating to reduce his recovery. The case affords an illustration of what may be assumption of risk, without any contributory negligence, or in addition to it. There is clear opportunity for the attendant circumstances so far to reduce the applicable standard of due care on the employee's part that the law will not charge him with contributory negligence, and yet may say that the danger was a risk he assumed. See distinctions discussed in McMyler v. Mehnke (C. C. A. 6) 209 F. 5, 126 C. C. A. 147. Hence the defense of assumption of risk is the one now controlling. If established, it is fatal to the action. Seaboard Air Line v. Horton, 233 U. S. 492, 34 S. Ct. 635, 58 L.

Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475. To establish the defense, it is essential that the employee should know and appreciate the danger, or be bound to do so. The trial below, therefore, turned about the question of a due warning of the plaintiff by the defendant covering this danger.

In December, 1924, McDougall signed a receipt for a time-table, saying in his receipt: "I acknowledge hereby that my attention has been especially called to and that I have knowledge of the information in the time-table hereby recited, which relates to overhead clearances." In this time-table, under the general heading "Special Instructions" and the subtitle "Overhead and Side Obstructions," it is stated that there are less than 21 feet from the top of the rail to the bottom of the obstruction in various places, including "Cleveland—all overhead structures between Euclid Avenue station and the N. Y. C. bridge west of Detroit avenue."[1] The three paragraphs then following call for special care by trainmen in all cases of scanty clearance.

[4] Two objections are made to the sufficiency of this time-table as being the necessary warning. The first is that a clearance of 18½ feet would have been enough to make it safe for this man, standing on this car, and hence that the 21-foot warning was not applicable. We cannot read it so narrowly. Its purport is that a clearance of less than 21 feet may sometimes be dangerous, and hence caution must always be used. It cannot be that the same warning would be effective against a tall man and not against a short one.

[5, 6] The second is that the time-table gave no express notice of the existence of the Thirty-Eighth street bridge. Since it did not, the question of McDougall's actual knowledge of the bridge became the pivotal dispute. We greatly doubt whether there is substantial evidence that he did not know. On his direct examination he says that he did not, and seems to infer, if he does not say, that his switching work had never taken him under this bridge. When shown the company's records, which purported to show that the switching crews of which he was a member had passed under this bridge more than 100 times, he said they could not be right; it had not been nearly so many times, not more than 10 times, perhaps not more than 5, and that on all times when he

[1] We assume, as the parties do, that these limits included West Thirty-Eighth street.

did pass under it he was riding in the engine or caboose, where he would not necessarily see the bridge. Later he undertook to testify that at this bridge there were no telltales, and, perhaps noticing that this implied familiarity with the bridge, he said he had been over there only once or twice. His final conclusion was that he could not remember having seen this bridge.

We find it unnecessary to decide whether his claim for lack of knowledge must be rejected, as being inconsistent with the conceded facts. For the purposes of this opinion we assume that he never had specifically seen or learned of the existence of this bridge. That assumption will not control the result. There were great numbers of these overhead bridges in Cleveland. McDougall admits that on the east side, where he mostly worked, there were a good many of them over this railroad, and he knew they were all dangerous; on the particular west side track where the accident occurred, and over which he had traveled at least to some extent, the record shows four of these bridges within a half mile and refers to others. McDougall had sat down upon the car in order to avoid such a bridge only a short time before the accident, and while still sitting he had passed under another bridge, only 800 feet before reaching Thirty-Eighth street; from this time, the latter bridge was in full view, and for some 500 feet before reaching Thirty-Eighth street there were three such bridges in sight while looking ahead.

We see no escape from the conclusion that McDougall was bound to know that, while standing on a moving box car anywhere in this locality, he was in constantly recurring danger from some one of this multitude of bridges, and hence was bound to know of the danger from each. Likewise it seems to us beyond dispute that in a locality where low bridges are frequent, and where the danger from them must be appreciated by every experienced freight brakeman, the chance of being hit by one of them is one of the historic and familiar risks of railroading, like the danger of getting off and on moving cars (Jacobs v. Southern Ry., 241 U. S. 229, 36 S. Ct. 588, 60 L. Ed. 970), or going between cars (Boldt v. Pa. Ry., 245 U. S. 441, 38 S. Ct. 139, 62 L. Ed. 385), or leaning out too far from the side of the train (Southern Pacific v. Lindner's Adm'r, 254 U. S. 415, 41 S. Ct. 162, 65 L. Ed. 335). These cases also show that, if the risk was or must have been known and appreciated,

it is immaterial that it had been forgotten at the critical moment.

The judgment must be reversed, and the case remanded for a new trial.