## THOMPSON v. TENNESSEE R. CO.

Circuit Court of Appeals, Sixth Circuit.
June 6, 1929.

No. 5089.

W. T. Kennerly, of Knoxville, Tenn. (R. L. Pope and Kennerly & Key, all of Knoxville, Tenn., on the brief), for plaintiff in error.

S. F. Fowler, of Knoxville, Tenn. (Fowler & Fowler, of Knoxville, Tenn., on the brief), for defendant in error.

Before MOORMAN, MACK, and HICKENLOOPER, Circuit Judges.

MACK, Circuit Judge. In an action under the Federal Employers' Liability Act (45 USCA §§ 51–59) for personal injuries, judgment was rendered for defendant on a directed verdict at the close of all the evidence. This was on a second trial; the verdict for plaintiff in the first trial having been set aside as not supported by the evidence.

Defendant operated a small railroad primarily for the transportation of coal and lumber, with its southern terminus at Fork Mountain, Tenn. Near Tioga, a stop north of Fork Mountain, ran a parallel side track for switching the log cars of the New River Lumber Company; this side track was to the left of the main track going south from Tioga, and, according to plaintiff's evidence, a foot and three-quarters nearer the main track than standard railroad practice sanctioned. The log cars were owned by the Lumber Company, which loaded them and brought them down to the side track, leaving them standing there until picked up by defendant's engine when it passed later in the day. Logs are customarily loaded on flat cars having along their sides metal brackets each holding a strong wooden upright, or standard, about six feet high. Although a metal chain passes around these standards to hold them perpendicular, there is some tendency for them to lean out slantingly or "spread" under the pressure of the load of logs. While one of plaintiff's witnesses, an employee of the railroad, admitted having often feared that spread standards of log cars on the side track might graze the lanterns swinging from the end of cabooses passing on the main track, there is no evidence of previous injury to riders on defendant's engines from this source.

Plaintiff, 20 years old on October 10, 1924, the time of the injury, had been a brakeman in the employ of defendant for slightly more than a year, and on and off for about half this time he had made the run past Tioga. Early on October 9, while he was home sick, the lumber company brought a log car down to the siding to be drawn off by defendant. Plaintiff's testimony tended to establish that defendant's engine later that

day, in switching a string of empty cars on-to the side track, backed them against the loaded car so violently that the chain passing around and supporting the standards became unloosed, causing one standard at the south end of the car to crack under the increased pressure of the logs and lean far out towards the main track, and that one of the bearings was shaken from the side of the car facing the main track. The combined effect of the listing and the broken standard, according to plaintiff's witnesses, was to diminish the clearance for engines passing on the main track to a mere four or five inches, or far less than was usual even at times when there were normally "spread" log cars on the side track. Observing its condition, defendant's engine crew, on the afternoon of the 9th, refused to move the car, and left it standing where it had been placed by the lumber company. Defendant's witnesses assert this to have been pursuant to a usage that cars improperly loaded or otherwise defective should be rejected by defendant's passing engines and thereafter promptly repaired by the lumber company. In fact no attempt to move or repair the car was made by any one for two days.

At noon of October 10th, plaintiff was head brakeman on a train going south to Fork Mountain, but having nine log cars to deliver at the Tioga side track. The switching operation required the engineer, when ordered by the conductor, to slacken speed so that the caboose could be cut off, then, after backing the cars up the side track, to pick up the caboose again and proceed. It was part of plaintiff's duty to receive the signal from the conductor and transmit it to the engineer. For this purpose, he testified, as the car neared the switch, he crossed from the right to the left side of the engineer and leaned out, as was necessary in order to see the signals of the conductor standing at the left rear end of the train. He testified further that, before turning to the rear, when about thirteen car lengths from the scene of his injury, he looked up the track and saw nothing. His statements to this effect in different parts of the record do not leave it perfectly clear whether he meant to say that he did not see the car or that he did not see its dangerous condition. There is no dispute that plaintiff was not told of the danger by members of the train crew who had passed Tioga the afternoon before, but there was sharp conflict as to whether the conductor, who sometimes was in telephonic connection with points ahead, affirmatively told him that the track was clear and also whether the

engineer and fireman were so situated just before the injury that they could and should have warned plaintiff. Plaintiff was hit in the back of the head by the projecting standard as his train passed the southern end of the car, and thrown underneath the wheels of the train.

Defendant's negligence is alleged in the declaration to have consisted in maintaining the tracks too close together, permitting the log car to remain where it was in so unsafe a condition, and failing to warn plaintiff either at the beginning of the trip or when the danger became acute. The District Judge, without deciding as to the existence of negligence, directed a verdict on the sole ground suggested by defendant, namely, assumption of risk. His oral charge sets forth as the reasons which persuaded him to take the case from the jury that, as plaintiff had testified that he had looked up the track, he must have seen the car despite his denial; furthermore that, if he did not see and apprehend his danger, it was because of his own lack of care; and that in such a situation the doctrine of assumption of risk applies, since an employee assumes, in addition to the ordinary risks, "all other risks which he knows about or which he by the exercise of ordinary care upon his part could see, know, and ascertain for himself." Moreover, he held some spreading of standards on the cars moved by defendant was usual.

Defendant contends that there was no proof of negligence to go to a jury and that therefore the directed verdict should be upheld regardless of the correctness of the trial court's holding as to assumption of risk. The directed verdict was, however, neither asked for nor granted on that ground, and in these circumstances an appellate court will assume that the evidence was sufficient on this issue unless it is perfectly clear that such an assumption cannot be made. In this case, however, we are satisfied that the jury could reasonably have found actionable negligence on the part of defendant.

Such negligence as there may well have been in maintaining the switch track so near the main track without any necessity for so doing cannot be relied upon by plaintiff for reasons hereinafter discussed. Plaintiff did not allege negligence on defendant's part in damaging the log car; certainly he did not establish either negligence therein or proximate causation thereby. But defendant clearly allowed its switch track to be obstructed with a car known by it to be so defective as to constitute an unusual danger to passengers and employees, and it gave no

warning of this condition. From the fact of two days' delay on the part of the lumber company in repairing and from the lack of specific testimony that the understanding between defendant and the company covered cars damaged by defendant, a jury might not unreasonably disbelieve either the existence or the applicability of such a usage as was relied on by defendant; furthermore, the jury might find that, even though the usage did exist, it did not create such a certainty of prompt action by the lumber company as wholly to absolve the railroad from the duty of taking any action with respect to cars whose location made them an immediate menace. The fact that defendant is primarily a lumber and not a passenger road may justify greater latitude in deciding whether or not certain acts or omissions should be characterized as negligent; but the decision in the circumstances is one for the jury, as counsel for defendant by his form of request and the court by the grounds of its direction properly assumed.

The question therefore was and is whether plaintiff assumed the risk of what must now be considered to have been defendant's negligence in this respect. Clearly he assumed the risk of all known and understood dangers, such as that arising from the narrowness of the space between the tracks. The evidence leaves little doubt that the danger, if any, threatened by the frequent presence near the main track of log cars whose standards were spread not an unusual distance from the perpendicular was likewise known and appreciated by plaintiff as a result of his year of experience. To such dangers the case of Southern Pacific Co. v. Berkshire, 254 U. S. 415, 41 S. Ct. 162, 65 L. Ed. 335, cited by defendants, is applicable.

But plaintiff's injury did not result from any of these ordinary risks; it resulted from an extraordinary condition not shown by the testimony to have ever occurred before. One assuming the risks of standards projecting to some extent beyond the rail would not necessarily assume the risk of their projecting to within a few inches of trains passing on the main track. Cf. Cincinnati, N. O. & T. Ry. v. Thompson, 236 F. 3 (C. C. A. 6). Therefore the direction of the verdict cannot be sustained, unless plaintiff knew or can be charged with knowledge of the specific condition existing on October 10 and with appreciation of the risk therefrom to him. It is clear that he was not told anything about it; the only other source of knowledge would be observation by him during the brief interval between his crossing to the left side of the

engine and the moment of injury. It may well be doubted, as the Thompson Case suggests, whether the defense of assumption of risk would be applicable, even conceding that plaintiff learned of the danger just before being injured, if the interval was too brief to permit him to quit the job upon which he was engaged.

Plaintiff, however, swears that he did not observe his danger. While the physical conditions were such at the time of the injury that the District Judge was justified in refusing to believe that a person looking up the track could possibly have failed to see the car, it does not follow that one seeing the car must have noticed how far the standards were projecting. A reasonably careful observer leaning out and therefore looking at an angle from a moving car would not necessarily gauge the position of the standards at a momentary glance, and the farther out he was leaning the harder it would be for him to do this accurately. This is the more especially true in plaintiff's case because at the time it was his primary duty to look to the rear for signals rather than forward, and because the jury was justified in finding that he had been told by the conductor that the track was clear.

Finally, even if reasonably careful observation by a man thus situated would have revealed the unusual extent of projection of the standards, plaintiff would not be barred on the ground of assumption of risk by reason of the fact that he had not exercised such care. Extraordinary risks differ from ordinary risks in that they are held to be assumed only when actually known and appreciated, and not also as the District Court said when they should have been seen and appreciated by a reasonable man. Of course the circumstances of the case may often of themselves give rise to the inference that there was actual appreciation despite a denial by the injured man, and sometimes this inference is so compelling as to require that the court direct the verdict for defendant. It is in this sense that the phrase, "risks which were obvious or fully known and appreciated," is used in reference to extraordinary risks. Cf. Delaware, L. & W. R. R. v. Koske, 49 S. Ct. 202, 73 L. Ed. — (decided February 18, 1929); Norfolk & Western Ry. v. Collingsworth (6 C. C. A.) 32 F.(2d) 561, decided May 10, 1929. But in the present case the inference was not so plain that reasonable men could find only one way. A more extensive statement of the principles of assumption of risk herein briefly adverted to is unnecessary, in view of the full treatment of

the subject in the Thompson Case and the decisions cited therein.

Judgment reversed, and cause remanded for a new trial.