## EMCH v. PENNSYLVANIA R. CO.

Circuit Court of Appeals, Sixth Circuit.
February 5, 1930.

No. 5390.

Hickenlooper, Circuit Judge, dissenting.

David P. Bowden, of Cleveland, Ohio (Leroy C. Lancer, of Cleveland, Ohio, on the brief), for appellant.

T. M. Kirby, of Cleveland, Ohio (Squire, Sanders & Dempsey and G. H. P. Lacey, all of Cleveland, Ohio, on the brief), for appellee.

Before DENISON and HICKENLOOPER, Circuit Judges, and TUTTLE, District Judge.

DENISON, Circuit Judge. While Emch, a brakeman, was stooping over to throw a switch, he was hurt by a passing engine; and he then brought this action. Thinking that plaintiff had assumed the risk of what happened, the District Court, upon the statement of the case by plaintiff's counsel, directed a verdict for defendant.

The petition shows that action purports to be brought under the Federal Employers' Liability Act (45 USCA § 51–59), and hence, to make a case, plaintiff must show that he was engaged in interstate commerce at the time of the injury. In the opening statement by plaintiff's counsel, as to the proof which would be offered, nothing was said on this subject; but that defect in the case was not relied upon, and may be capable of correction; indeed, the petition was read to the jury.

If the necessary diverse citizenship exists (the petition does not show), plaintiff might perhaps recover under the common law. From that aspect, contributory negligence would be a bar, unless it is removed by some applicable statute not mentioned in the petition. Under the facts of this case, assumption of risk and contributory negligence may be fairly differentiated. Upon this summary record, we prefer not to consider contributory negligence.

We think there was room to infer negligence by the railroad. Plaintiff had worked upon this line for some time; then had been

in other employment, and had just returned to his old work. In these yards where the accident occurred and along the line of the railroad, to the familiar knowledge of plaintiff during his former employment, the switch stand levers were placed at about 55 inches away from the nearest rail. Allowing 22 inches (said in argument to be the right amount) for the overhang of the cylinder head, this would give a clearance of 33 inches, which made it reasonably safe for a man to be operating the switch stand while a train was passing. This particular switch had been installed to be operated from a tower, but that method had been abandoned and the usual manual operating lever had been supplied, spaced 35 inches from the rail, thus allowing only 13 inches clearance. It had been installed since plaintiff's former employment, and this was his first occasion to use it. No reason appears why it was necessary in this instance to depart from the usual spacing. While it is true that ordinarily the location of apparatus or structures in proximity to railroad tracks is a matter in which a jury is not allowed to review the judgment of the locating engineers, and it may be that there was here ample need or propriety of this location, so that the jury could not be allowed to infer negligence therefrom; yet, as it was unexplained and was apparently unnecessarily dangerous, we think it had a substantial tendency to show negligence, as against plaintiff, ignorant and unwarned. Of course, it is of importance, in appraising defendant's conduct, to observe that one in plaintiff's situation would be ignorant that this installation differed from the standard and so that some otherwise unnecessary warning might be appropriate.

■■ If risk of injury was created by this negligent location, Emch did not assume it unless he knew and appreciated the danger, or unless it was so obvious that the law will charge him with such knowledge and appreciation. Here again the circumstances are unusual. At this point a car was to be dropped and switched from the main track to a crossover track and from the crossover to the nearby transfer track. Emch's instructions required him to set the distant crossover transfer switch, then hasten back to this one, and be prepared to throw it after the engine and three cars had passed him on the main track and before the arrival of the last car, which by that time would be cut off and following at a short distance. All this required quick work on his part. He had never handled this particular switch nor seen it before. He did not know that it was different

from the standard switches. In some haste he reached it and stooped down to be ready to lift the lever at the right instant. The difference between 55 and 35 inches would be obvious to one who looked at it with care; not necessarily so, we think, to one who was in haste and familiar with the standard setting. As he stooped over, he faced the track. The engine was approaching from his left, and he would naturally assume that the switch stand would not be so placed that it would be unsafe for him to operate it in the usual manner. About 5 or 6 inches in the position of his head, was the difference between safety and danger. He might very properly have his eyes fixed upon the ground at his feet from which he was to lift. Even though he may have been careless in getting into the danger zone when he might have kept outside of it, a point which we do not consider, it cannot be said as a matter of law that he assumed the risk.

The case is, in many respects, on all fours with our decision in Southern Railway Co. v. Rogers (1912, C. C. A.) 196 F. 286, 290, in which we reviewed the then prior decisions. The recent Supreme Court cases which have applied and upheld the defense of assumption of risk do not, so far as we can see, defeat the application here of the principles declared in the Rogers Case. In C. & O. Railway Co. v. Nixon, 271 U. S. 218, 46 S. Ct. 495, 70 L. Ed. 914, plaintiff surely appreciated the danger in staying on the track when a train was coming, and the constant danger that one might be coming. In Toledo, St. L. & W. R. Co. v. Allen, 276 U. S. 165, 171, 48 S. Ct. 215, 72 L. Ed. 513, Allen was familiar with the location; there had been no recent change without his knowledge; he had time and opportunity to know the danger; there was "absence of proof that plaintiff was exposed to unusual danger by reason of departure from practice generally followed." In C. & O. Railway Co. v. Leitch, 276 U. S. 429, 48 S. Ct. 336, 72 L. Ed. 638, plaintiff well knew that the mail cranes were commonly close enough to be dangerous to one leaning out. The earlier cases cited in these three are equally distinguishable from the instant one.

Of course, we have assumed to be true everything in the opening statement, and all permissible inferences therefrom.

The judgment is reversed.

HICKENLOOPER, Circuit Judge (dissenting). I cannot concur. Had the switch stand needlessly been placed so as to allow

only 13 inches of clearance, it is conceivable to me that this act might be held to have been negligent toward those whose duty required them to be upon the sides of the moving cars (see dissenting opinion in Southern Pac. Co. v. Berkshire, 254 U. S. 415, 419, 41 S. Ct. 162, 65 L. Ed. 335); but the plaintiff was not so injured. To those whose duty it was to throw the switch, the situation was observable at a glance. From these the company had the right to expect self-protection. Chesapeake & O. R. Co. v. Nixon, 271 U. S. 218, 46 S. Ct. 495, 70 L. Ed. 914; Pennsylvania R. Co. v. Lutton, 29 F.(2d) 689 (C. C. A. 6). Because the situation was so open and obvious, the mere location of the stand cannot be said to have been negligent toward them, and, because of this and the plaintiff's experience, the failure to warn him to beware the overhang is in the same category. From neither the location of the stand nor the failure to warn could the company have reasonably expected consequences of a generally injurious nature to experienced employees operating the switch. This is an elementary test of the existence of negligence, and plaintiff can claim only a breach of that duty which is owing to employees of the class in which he was acting when injured. I find no breach of such a duty. Randall v. Baltimore & O. R. Co., 109 U. S. 478, 3 S. Ct. 322, 27 L. Ed. 1003.

But, apart from the existence of negligence, the risk of possible injury seems to me to have been clearly assumed. The danger lay in the overhang of the approaching locomotive. This was so obvious that it must have been known and appreciated. The fact that the plaintiff was hurried and momentarily forgetful of the ever-impending danger, and got a little too close to the rail when he might have remained in the clear, does not relieve the situation. New York, C. & St. L. R. Co. v. McDougall, 15 F.(2d) 283 (C. C. A. 6). In railroading, eternal vigilance is the price of safety, and the risk of injury from those dangers which are obvious, ordinarily incident to and inherent in the very operation of the road is assumed by the employee.

I am unable to satisfactorily distinguish such cases as Southern Pac. Co. v. Berkshire, supra, and Chesapeake & O. R. Co. v. Leitch, 276 U. S. 429, 48 S. Ct. 336, 72 L. Ed. 638, or more especially Toledo, St. L. & W. R. Co. v. Allen, 276 U. S. 165, 48 S. Ct. 215, 72 L. Ed. 513, Chesapeake & O. R. Co. v. Nixon, supra, and Randall v. Baltimore & O. R. Co., supra. In so far as Southern Ry. Co. v. Rogers, 196 F. 286 (C. C. A. 6) is in conflict with

these views, the present case must be held as controlled by the later decisions of the Supreme Court. The danger there, as here, was omnipresent during switching operations, and not only the decisions already cited, but those in other cases which were decided after the Rogers Case, classify these obvious operating dangers as among those the risk of injury from which is assumed. Jacobs v. Southern Ry. Co., 241 U. S. 229, 36 S. Ct. 588, 60 L. Ed. 970 (boarding moving train); Boldt v. Pennsylvania R. Co., 245 U. S. 441, 38 S. Ct. 139, 62 L. Ed. 385 (going between cars); New York, C. & St. L. R. Co. v. McDougall, supra (brakeman struck by low overhead bridge). Compare also Hallstein v. Pennsylvania R. Co. (C. C. A. 6) 30 F.(2d) 594 (falling from coal tipple); Norfolk & W. Ry. Co. v. Kratzer (decided, C. C. A. 6, January 24, 1930) 37 F.(2d) 522 (employee struck by train in yards). I am of the opinion the District Court was right in directing a verdict.