## GRAND TRUNK WESTERN RY. CO. v. REID.

### No. 5332.

Circuit Court of Appeals, Sixth Circuit.
June 28, 1930.

L. J. Carrigan, of Detroit, Mich. (Frederic T. Harward and George H. Kretzschmar, both of Detroit, Mich., on the brief), for appellant.

T. J. Bresnahan, of Detroit, Mich. (Elmer H. Groefsema, of Detroit, Mich., on the brief), for appellee.

Before DENISON and HICKS, Circuit Judges, and RAYMOND, District Judge.

HICKS, Circuit Judge.

Action under the Federal Employers' Liability Act (title 45, U. S. Code, c. 2, §§ 51–59 [45 USCA §§ 51–59]) by Elizabeth Reid, administratrix of the estate of James A. Reid, against Grand Trunk Western Railway Company, to recover damages for his death. Judgment for plaintiff, and the defendant appealed.

Appellant owns and operates a double-track railroad running approximately east and west through Lapeer, Mich. Court street crosses these tracks in an approximately north and south direction. The crossing is of plank with a board sidewalk on either side. The passenger station is on the north side of the west-bound track and somewhat more than 400 feet east of Court street. The freighthouse is slightly northwest of the passenger station. West of the crossing the house track branches from the west-bound main, and, gradually diverging therefrom, runs over the crossing and to the freighthouse. The frog of the switch is 48 feet west of the center of the crossing and the point about 50 feet farther west. The plank crossing has an average width of 35½ feet. Deceased, 36 years old, an experienced brakeman, was a member of a train crew consisting of Conductor Franklin, Engineer Shattuck, Fireman French, and Brakemen Reynolds, Carey, and himself. They operated a local freight train, and on November 4, 1925, the date of Reid's death, they were bound east. At Lapeer it was their custom to do the switching necessary to place loaded cars to be picked up by through freights. In these operations deceased "followed the engine," that is, it was his duty to couple and cut off cars and give signals. On the above date a flat car loaded with machinery and two refrigerator cars loaded with potatoes stood upon the house track by the freighthouse. At noon the crew, then consisting of the engineer, fireman, and Brakemen Reid and Carey, pushed three loaded gondola coal cars from the west main in upon the house track, coupled them to the flat or machinery car and refrigerator cars and pulled the cut of cars so constituted out of the house track and on to the west main. After these cars cleared the switch they were shoved east along the west main until the west end of the west refrigerator car was on the crossing. There deceased cut off the refrigerator cars. The west main was down grade toward the station, and there is evidence tending to show that the refrigerator cars, after being cut off, rolled until stopped by the brakes put on by Carey from the top of one of the refrigerator cars. They rolled a short distance only because when they stopped the west end of the west refrigerator car, accepting appellee's evidence as true, was approximately, if not quite, at the center of the crossing. At a signal from deceased, who was on the engineer's side, the train then backed up until it was west of the switch. Deceased crossed the track to the switch stand, turned the switch, returned to the south side, signaled the engineer forward, and climbed upon the flat car at its southeast corner. The record fails to disclose clearly whether he rode on top or

stood in the stirrup at the side of the car, but from subsequent developments we infer that he stood on top and rode facing east as he would naturally do in the discharge of his duty as a lookout until the flat car reached the freighthouse, where he cut it off and left it. He then signaled the engineer to back up, walked the length of the first coal car, climbed to the stirrup on the east end and south side of the second coal car, and, standing with his body at an angle of about 45 degrees, rode in this position, looking east, until the back of his head struck the northwest corner of the west refrigerator car, when he was knocked off and under the coal cars and killed.

We consider only the assignments of error discussed in appellant's brief.

■ We think deceased was killed while engaged in interstate commerce. The refrigerator or potato cars were destined for points beyond the state. Their movement was halted for a few minutes only upon the westbound main until the flat car could be returned to the freighthouse. This having been done, the train on which deceased was riding when killed was returning to the west main for the purpose of picking up the potato cars and placing them upon the "pickle" or passing track, there to become a part of a through train and thus to continue upon their interstate journey. L. & N. R. Co. v. Parker, 242 U. S. 14, 37 S. Ct. 4, 61 L. Ed. 119; Sullivan v. Wabash Ry. Co., 23 F.(2d) 323, 324 (C. C. A. 6).

■■ Appellee's case was based upon the alleged negligence of Brakeman Carey in stopping the refrigerator or potato cars too near the house track for clearance. There is evidence tending to show that Carey was negligent in this particular; that from the point upon the north rail of the west-bound main where the west end of the west refrigerator car stopped to the south rail of the house track was 64 inches. The overhang of the refrigerator car was 27 inches and that of the gondola coal car 31 inches, excluding the grabirons or ladders on both cars. This would leave a clearance at the point indicated of 6 inches, less the ladders and grabirons, which of course decreased and increased toward the west and east respectively. Carey knew that the coal cars and flat car were to be returned to the freighthouse in charge of deceased, and that the coal cars were to be again pulled to the west-bound main. He might reasonably have anticipated that deceased would ride upon the south or engineer's side, the better to give signals; that he probably would be "leaning out as a man naturally rides on a car," and that riding there his body would not clear the refrigerator cars.

But appellant insists that the deceased assumed the risk, and, upon the uncontroverted facts, we think he did. He had been a brakeman upon this run for more than two years. During this period he had almost daily engaged in switching operations over this same switch and in the same manner. He was thoroughly acquainted with the general situation. He of course knew the overhang of the cars. He was necessarily a short distance only from the refrigerator cars when they were stopped upon the crossing, and it is difficult to conceive that he, being in charge, did not then note their proximity to the house track, but, however that may be, a few moments later he, while riding upon the top of the southeast corner of the flat car (if he had then been clinging to the side his body would not have cleared), passed immediately by the refrigerator cars, and we cannot escape the conclusion that he, whose duty it was to be upon the lookout, saw and appreciated, or must be charged with seeing and appreciating, that which was obvious, to wit, that the insufficient clearance would endanger the safety of any brakeman who would undertake to ride by while leaning out. We think, therefore, that appellant's motion for a directed verdict should have been sustained. Gila Valley Ry. Co. v. Hall, 232 U. S. 94, 102, 34 S. Ct. 229, 58 L. Ed. 521; C. & O. Ry. Co. v. Proffitt, 241 U. S. 462, 468, 36 S. Ct. 620, 60 L. Ed. 1102; Seaboard Air Line R. Co. v. Horton, 233 U. S. 492, 504, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1; C., N. O. & T. P. Ry. Co. v. Thompson, 236 F. 3, 7 (C. C. A. 6); N. Y., C. & St. L. Ry. Co. v. McDougall, 15 F.(2d) 283, 284 (C. C. A. 6); Davis v. Crane, 12 F.(2d) 355, 357 (C. C. A. 8). It is of no avail that the deceased may have momentarily forgotten the danger of the situation. Jacobs v. Southern Ry. Co., 241 U. S. 229, 236, 36 S. Ct. 588, 60 L. Ed. 970; N. Y., C. & St. L. Ry. Co. v. McDougall, supra.

The same result would also follow upon another theory of fact to which the evidence lends color, to wit, that the west end of the west refrigerator car was stopped by Carey far enough east of the center of the crossing to allow sufficient clearance for deceased only if he had stood up straight. If such situation existed, it was plainly observable to deceased as he passed immediately by it going east, and, if upon his return he leaned out too far and was struck, it was a risk assumed. Sou. Pac. Co. v. Berkshire, 254 U. S. 415, 418, 41

S. Ct. 162, 65 L. Ed. 335; Toledo, St. L. & W. R. Co. v. Allen, 276 U. S. 165, 171, 48 S. Ct. 215, 72 L. Ed. 513.

We find no prejudicial error in the admission of the testimony of the expert witness, Chapoton, touching the general custom by which brakemen determine the clearance of cars, and the matter of undue prolongation of the deliberations of the jury will probably not occur upon another trial.

The result is the judgment of the District Court is reversed, and the case remanded for a new trial.