## REID v. GRAND TRUNK WESTERN R. CO.
### No. 6490.

Circuit Court of Appeals, Sixth Circuit.

Nov. 9, 1934.

E. H. Groefsema, of Detroit, Mich. (Elmer H. Groefsema, of Detroit, Mich., on the brief), for appellant.

William W. Macpherson, of Detroit, Mich. (and H. V. Spike, of Detroit, Mich., on the brief), for appellee.

Before MOORMAN, HICKS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

This case is here for the second time. Upon the first trial in the District Court, there was a verdict and judgment for Elizabeth Reid, administratrix, and the railroad company appealed. This court reversed the judgment, holding that the motion for a directed verdict should have been sustained upon the ground that the deceased assumed the risk. Upon the retrial the District Judge, following the opinion, sustained the motion of appellee for a directed verdict. The governing evidence upon the first trial is fully set forth in the former opinion reported in (C. C. A.) 42 F.(2d) 403.

Appellant insists that different evidence was educed at the last trial. It differs in the following particulars:

First. At the first trial the evidence indicated that after the deceased had cut off the refrigerator cars they rolled eastwardly and stopped on the main line at a point where the west end of the west refrigerator car was about 18 feet from the deceased. The present record tends to show that when the refrigerator cars stopped the deceased was about 125 feet away and engaged in turning the switch connecting the house track with the west main. It is urged that he was therefore prevented from observing that the refrigerator cars had stopped too close to the house track.

Second. Upon the first trial it was shown that deceased turned the switch and signaled the engineer to shove his train, consisting of three loaded gondola coal cars and a flat car loaded with machinery, onto the house track; that he took a position upon the southeast corner of the front car (the flat car) going eastwardly, and while in this position rode hard by the refrigerator cars which were standing on the south side. The present record establishes that as he passed the refrigerator cars he was standing in the stirrup at the northeast corner of the front gondola coal car and that his view was so obstructed by the farm machinery on the flat car in front of him that he could not see that the refrigerator cars had failed safely to clear the house track. We think, however, that whether a verdict should have been directed does not depend upon what the deceased saw or failed to see either while standing

at the switch or riding eastwardly. There are other facts to be considered.

The testimony in the present case indicates that when the cut of cars upon which deceased was riding eastwardly reached a point near the freight dock he stopped the cars by a signal to the fireman and then cut off the flat car from the north side; that the train then pulled westwardly and he passed through the opening to the south side and turned westwardly at a point about 300 feet from the crossing. He was not seen again until he was within 2 feet of the point of the accident, but it is certain that from the point where he was last seen upon the ground he walked the full length of the east gondola coal car, about 30 or 35 feet, for when he was struck he was standing in the stirrup on the east end and south side of the second gondola car with his body leaning at an angle of 45 degrees and facing east. If the train was moving while he was walking he of course walked farther than the length of the car. As he walked the refrigerator cars were directly in front of him and in full view.

The accident happened at exactly 12:40 p. m. upon a clear day. Deceased was an experienced brakeman of years' standing and for a long period had engaged in similar switching operations daily at the same point. In switching operations it was his particular duty to "follow the engine"; that is, by appropriate signals he controlled the movement of the engine. He was thoroughly familiar with the overhang of the cars and being in charge of the switching movements it was his primary duty to see that the refrigerator cars were shoved into the clear. See Darden v. Ry. Co., 71 F.(2d) 799 (C. C. A. 6); and Pennsylvania R. Co. v. Bourke, 61 F.(2d) 719 (C. C. A. 6). Taught by long experience, no one knew better than deceased when this duty was properly performed. The case presents no "extraordinary" condition such as the leaning standards in Thompson v. Tennessee R. Co., 33 F.(2d) 18 (C. C. A. 6). As he walked westwardly with the refrigerator cars directly in front of him he was charged with observing and we think could not have failed to observe the proximity of the cars to the house track. There is evidence tending to show that the space between the northwest corner of the west refrigerator car which struck the deceased and the car upon which he was riding was "from four to six inches." There was also evidence tending to show that this space was about 18 inches. If the clearance was only 4 to 6 inches the danger was glaring. If it

was 18 inches and the deceased chose to ride with his body leaning at an angle of 45 degrees it was a risk assumed. Grand Trunk Western R. Co. v. Reid, 42 F.(2d) 403, 405 (C. C. A. 6).

We conclude that the evidence introduced at the second trial did not differ so substantially from that produced at the first as to justify the submission of the case to the jury.

The judgment is affirmed.